Justice Willett delivered the opinion of the Court.
*108 Under exacting provisions of the Texas Family Code, parents may relinquish their parental rights by executing an affidavit of voluntary relinquishment. In this parental-termination case, even though the parents executed statutorily compliant affidavits, the court of appeals held that the trial-court order terminating parental rights could be overturned on appeal on grounds that clear and convincing evidence of the child's best interest was lacking. We disagree and reverse the court of appeals' judgment regarding termination of parental rights.
I. Background
In February 2015, the Department of Family and Protective Services in San Antonio brought this suit on behalf of K.S.L., an infant. The petition requested that the Department be appointed temporary managing conservator of K.S.L., and requested termination of the parents' parental rights if reunification could not be achieved and termination was in the child's best interest. The petition attached an affidavit of a Department employee stating that the mother, S.C. (Mother), had recently tested positive for methamphetamine, amphetamine, and marijuana. A drug test for the father, K.L. (Father), was pending at the time, but he later admitted he had relapsed in January 2015. The parents had also appeared to be under the influence of an intoxicating substance when they turned their children over to a caseworker. All of this had occurred while there was already an open legal case concerning the parents and another daughter. The affidavit detailed several incidents of possession, use, and sale of illegal drugs by both parents. It detailed one occasion on which the Father was driving a car with the Mother and the other daughter as passengers, and led police on a high-speed chase exceeding 100 miles per hour. The Father eventually stopped and left the Mother and daughter on the side of the road. He later admitted during a psychological assessment that he had panicked because he was under the influence of methamphetamine and hydrocodone. He conceded that at times he and the Mother used methamphetamine daily. The Mother admitted during a psychological assessment that during the high-speed chase she too was under the influence of drugs.
After a hearing, the trial court appointed the Department temporary managing conservator of K.S.L. The Department caseworker initially sought reunification of the family. A May 2015 hair-follicle test on the Father tested positive for methamphetamine. May 2015 psychosocial assessments and reports state that both parents had criminal histories as well as extensive histories of drug abuse, and that both had relapsed and were using methamphetamine in January 2015, a few months after K.S.L.'s birth. In September 2015, the Department recommended that it continue as temporary managing conservator. At a September 2015 permanency hearing,[1] the court's handwritten notes referenced the parents' "drug and lingering issues." The court's permanency hearing order of the same date found that the Department had made reasonable efforts to finalize a permanency plan. But based on plans and reports submitted to the court, it concluded that the parents were not able to provide K.S.L. with a safe environment and that returning her to the parents was not *109 in her best interest. In an October 2015 report the caseworker changed the "primary permanency goal" from family reunification to relative adoption.
After the permanency hearing, both parents initially demanded a jury trial, but in December 2015 both parents signed affidavits of voluntary relinquishment of parental rights. Among other provisions, the affidavits recite that the parents have been informed of and understand their parental rights and duties, and that "termination of the parent-child relationship is in the best interest of the child(ren)." As to the effect of signing the affidavits, they state: "I understand that by naming the Texas Department of Family and Protective Services as Managing Conservator in this Affidavit of Relinquishment, I give up all my parental rights and grant them to the Department and/or to the adoptive parents with whom my child(ren) may be placed." As to the voluntary nature of the relinquishments, the affidavits state: "I freely, voluntarily, and permanently give and relinquish to the Department all my parental rights and duties. I consent to the placement of the child(ren) for adoption or in substitute care by the Department or by a licensed child-placing agency." Throughout the proceeding in the trial court and on appeal, the parents have been represented by counsel.
The trial court conducted a brief trial. Counsel for each parent was present. Counsel offered the affidavits and requested that the court take judicial notice of them. The Court reviewed the affidavits and did so. The Department called the caseworker who testified that in her belief the relinquishments were in K.S.L.'s best interest and that arrangement had been made for an uncle to adopt her. The trial court stated in open court that it "will make all necessary findings for termination as required by law, including, but not limited to, best interest." The court signed an order of termination that day, terminating the parent-child relationship of both parents. The order recited that the court had examined the record and heard the evidence and argument of counsel presented at trial. The order found by clear and convincing evidence that (1) the parents had signed irrevocable affidavits of relinquishment, and (2) the terminations were in K.S.L.'s best interest. The order also appointed the Department permanent managing conservator of K.S.L.
A few days later, both parents appealed the termination of their parental rights on the sole ground that the evidence was legally and factually insufficient to support the trial court's best-interest finding. The record and briefs are devoid of any explanation as to why the parents changed their minds and sought to restore their parental rights.
A divided court of appeals reversed the trial-court judgment terminating parental rights, holding, "the Department did not meet its burden to establish by clear and convincing evidence that termination of Mother's and Father's parental rights to K.S.L. is in the child's best interest."[2]
II. Discussion
A. The Interplay of Family Code sections 161.001(b) and 161.211
The Legislature has set out detailed requirements for an affidavit of voluntary relinquishment of parental rights. Reflecting the grave significance of such a procedure, Family Code section 161.103 includes *110 28 subparts. The statute requires, among other elements for a valid affidavit: (1) a waiting period after birth; (2) two witnesses; (3) verification by the parent that termination of the parent-child relationship is in the child's best interest; (4) designation of the person or agency to serve as the child's managing conservator; (5) a statement that the parent has been informed of parental rights and duties; and (6) a statement that the termination is irrevocable if that is (as here) the case.[3] The parents' affidavits complied with all statutory directives. For example, as to the requirement that the parent be informed of her parental rights and duties, the affidavit sets out 11 such rights and duties.[4] As to the irrevocable nature of the affidavits, they state:
7. Affidavit of Relinquishment is Irrevocable
I fully understand that this Affidavit of Relinquishment of Parental Rights, once signed, is and shall be forever final, permanent, and irrevocable. I fully understand that if I change my mind at any time, I can never force the agency to destroy, revoke, or return this affidavit. I also understand that I will no longer be informed of any hearings or proceedings or decrees affecting the child(ren) named in this Affidavit, including any termination suit.
This case concerns the interplay of two Family Code sections: 161.001(b) (governing grounds for termination orders) and 161.211 (governing attacks on termination orders).
The grounds-for-termination provision, section 161.001(b), states:
The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:
(1) that the parent has: ....
....
(K) executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by this chapter;
.... and
(2) that the termination is in the best interest of the child.
The parents emphasize that section 161.001(b) requires both a ground for termination set out in subsection (b)(1) and a separate finding under subsection (b)(2) that termination is in the child's best interest. We agree that the statute is unmistakably written in the conjunctive and requires both a statutorily-compliant affidavit and a finding that termination is in the child's best interest. But the trial court made the required best-interest finding, expressly finding "by clear and convincing evidence" in its order of termination "that termination of the parent-child relationship" of both parents was "in [K.S.L.'s] best interest."
The attack-on-termination provision, section 161.211 (titled "Direct or Collateral Attack on Termination Order"), states in subpart (c):
A direct or collateral attack on an order terminating parental rights based on an unrevoked affidavit of relinquishment of parental rights or affidavit of waiver of interest in a child is limited to issues relating to fraud, duress, or coercion in the execution of the affidavit.[5]
K.S.L.'s parents do not contend their affidavits were tainted by fraud, duress, or coercion. Instead, they argue the *111 trial court's best-interest determination was factually and legally insufficient.
We disagree. Moreover, the parents' appeal is based on a ground not covered by the statute, and we are unpersuaded by their arguments for interpreting section 161.211(c) to allow their appeal.
The parents contend section 161.211(c) should only apply to challenges to the affidavit , rather than all challenges to the order of termination. We cannot agree because the plain wording of the statute applies to attacks on any "order terminating parental rights" and is not limited only to attacks on the affidavit on which the order is based. The parents' suggested construction would read "an order terminating parental rights based on" out of the statute. We presume that lawmakers intended what they enacted and that every word in a statute should be given its natural meaning.[6]
The parents suggest that we limit section 161.211(c) to attacks on the relevant affidavit, because otherwise this section would eliminate the dual requirements of an affidavit under section 161.001(b)(1) and a best-interest determination under section 161.001(b)(2). The court of appeals found this argument persuasive, quoting one of its own decisions: "To hold otherwise would subsume the requirement of proving best interest by clear and convincing evidence into the requirement of proving an act or omission listed in section 161.001 by clear and convincing evidence."[7] Regardless of what section 161.001 requires of the trial judge, section 161.211(c) limits appellate review of the termination order to grounds the parents did not raise. Further, we disagree with what appears to be the parents' underlying premise. They (and the court of appeals) apparently believe the affidavit cannot by itself support a best-interest determination. We believe that the affidavit itself, in the ordinary case, can be ample evidence to support a best-interest determination. We so held in Brown v. McLennan County Children's Protective Services , where we stated that "we find it was the intent of the Legislature to make such an affidavit of relinquishment sufficient evidence on which the trial court can make a finding that termination is in the best interest of the children."[8] We did not hold in Brown that the affidavit is always sufficient by itself to support a best-interest finding, but we indicated that it was generally sufficient, and was sufficient "[u]nder the facts"[9] in that case.[10]
Brown was decided shortly before the United States Supreme Court decided Santosky v. Kramer .[11] In Santosky , the *112 Court held, under the Due Process Clause of the Fourteenth Amendment, that when the State seeks to sever irrevocably the parent-child relationship, it must establish its grounds by clear and convincing evidence.[12] At the time Brown was decided, the Texas statute on affidavits of relinquishment required a best-interest finding, but did not require the court to make that finding by clear and convincing evidence.[13]
But even under a clear-and-convincing standard, we think in the ordinary case a sworn, voluntary, and knowing relinquishment of parental rights, where the parent expressly attests that termination is in the child's best interest, would satisfy a requirement that the trial court's best-interest finding be supported under this higher standard of proof. Under the Family Code, " 'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."[14] A parent's willingness to voluntarily give up her child, and to swear affirmatively that this is in her child's best interest, is sufficient, absent unusual or extenuating circumstances, to produce a firm belief or conviction that the child's best interest is served by termination. The holding and logic of Brown apply even if the standard of proof has changed. The Legislature appears to agree, as it added subsection 161.211(c) to the Family Code, and thereby limited appellate review, after it amended section 161.001 to impose the clear-and-convincing standard.[15]
B. Due Process
The parents argue that reading section 161.211(c) to bar them from challenging the factual and legal sufficiency of the best-interest determination would violate their federal due process rights. We disagree.
Deciding a due process claim does not of course lend itself to a simple analysis. The United States Supreme Court has examined due process concerns in parental-termination cases. In Lassiter v. Department of Social Services , it held that due process did not require the appointment of counsel in every parental-termination proceeding.[16] It stated that due process "expresses the requirement of 'fundamental fairness,' a requirement as opaque as its importance is lofty."[17] Santosky recognized a "fundamental liberty interest of natural parents in the care, custody, and management of their child,"[18] but explained that due process asks not only whether the parent has due-process rights, but "if so, what process is due."[19] These cases guide us but do not provide a direct or simple answer to the due process challenge raised in today's case.
*113 The parents focus on Santosky . At the outset, Santosky did not address whether due process required appellate review of anything, though we accept that appellate review may be an element or component of procedural due process. In Lassiter , for example, in discussing the North Carolina parental-termination regime at issue, the Court noted the parent's right of appeal and held that the trial court can determine a right to counsel on a case-by-case basis, "subject, of course, to appellate review."[20] But as we examine federal due process law in the area of appellate review, its requirements mainly concern the equal treatment of litigants. In another case analyzing the federal due process concerns implicated in parental-termination cases, the Court recognized that it had not held the States are required to establish avenues of appellate review, but had held that "once established, these avenues must be kept free of unreasoned distinctions that only impede open and equal access to the courts."[21] A court navigating the constitutionality of access to State judicial processes must enter a confluence of "equal protection and due process concerns."[22] A State cannot, for example, "arbitrarily cut off appeal rights for indigents while leaving open avenues for more affluent persons."[23] In this regard, Texas law does not discriminate against any class of litigants in a manner that would raise federal due process or equal protection concerns. Section 161.211(c) applies equally to all parents who execute affidavits relinquishing parental rights, allowing appeals on certain, enumerated grounds and disallowing appeals on other grounds. And we have held that, as to appellate avenues available in government-initiated termination cases, the statutory right of indigent parents to appointed counsel "endures until all appeals are exhausted, including appellate proceedings in this Court."[24]
Santosky is also distinguishable because today's case can be analyzed as a waiver case. The parents, in signing the affidavits of relinquishment, voluntarily and knowingly waived their parental rights. We have recognized that "[w]hile a parental rights termination proceeding encumbers a value far more precious than any property right, this right may be waived through statutes such as ... section 161.103."[25] Of course rights, including constitutional rights, can be waived. An analogy in the criminal context is a plea agreement. A criminal defendant who voluntarily and knowingly enters into a plea bargain generally cannot complain on appeal that he was denied his constitutional rights to a jury trial or to confront the witnesses against him.[26] A heightened standard of *114 proof-beyond a reasonable doubt in a criminal case or clear and convincing evidence in a parental-termination case-does not preclude a valid and binding waiver of a trial conducted under that prescribed standard of proof. Section 161.211(c) is no more precluded by the essential reasoning of Santosky than the rules adopted in every jurisdiction that permit plea agreements. To argue otherwise would suggest that every plea bargain could be reopened on appeal on grounds that the defendant's constitutional right to demand proof of guilt beyond a reasonable doubt was not established below.[27] Of course, the essence of a fair plea bargain is that it be knowing and voluntary.[28] And similarly here, procedural due process concerns are addressed and preserved in section 161.211(c), by allowing the parent to appeal on grounds that the affidavit was the product of fraud, duress, or coercion.
Instead of focusing on the waiver aspect of this case, we can alternatively conduct a more general due process analysis as the United States Supreme Court did in Lassiter and Santosky . In those cases, the Supreme Court looked to the due process approach laid out in Matthews v. Eldridge .[29] We have applied this approach in a number of cases, including parental-termination cases.[30] Under Matthews , we must balance three elements: the private interests at stake, the government's interest supporting the challenged procedure, and the risk that the procedure will lead to erroneous decisions.[31] The private interest of the parents in termination cases is indisputably "a commanding one."[32] The State's interest in the welfare of the child means that its interest in a just decision is largely coextensive with the parents' interests.[33] But we have repeatedly emphasized *115 that the State, as parens patriae for the child,[34] has an interest in seeing these cases decided not only fairly but also expeditiously. "Parents and children [ ] have an interest in resolving termination proceedings as expeditiously as reasonably possible."[35] The child's best interest is inherently threatened by undue uncertainty and delay in finally determining where the child will live and who will raise her. This concern is also reflected in legislative mandates that trial-court proceedings and appeals in parental-termination cases are subject to expedited procedures,[36] and the statutory mandate that in deciding the child's best interest, "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest."[37] The United States Supreme Court likewise recognized in Lassiter , almost as a given, that "child-custody litigation must be concluded as rapidly as is consistent with fairness."[38] And the following year, it observed, "There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current 'home,' under the care of his parents or foster parents, especially when such uncertainty is prolonged."[39]
Matthews also calls on the reviewing court to examine the risks that the procedure will lead to erroneous decisions. We hold that Texas law addresses this concern sufficiently to meet due process requirements. As noted above, there are many safeguards included in the statutory elements for an affidavit of relinquishment, and the affidavit is itself strong evidence that termination is in the child's best interest. In addition, the parent may appeal on grounds that the affidavit was secured by fraud, duress, or coercion as provided by section 161.211(c), grounds directed at whether the parent's waiver of parental rights was knowing and voluntary. We cannot say that the Legislature, in setting out these detailed procedures that are intended to ensure that terminations are knowing and voluntary, while also addressing the need for finality and promptness in these proceedings, has imposed a procedure that violates federal due process.
*116 III. Conclusion and Disposition
Termination of parental rights is a grave decision, and a searching and painstaking legal process is required-rightly-by Texas law. But like other decisions where courts are called upon to use the powers of the government to interfere with the parent-child relationship, the needs of the child are not best served by a legal process that fosters delay and unrestrained second-guessing.
This trial-court order terminating parental rights should stand. We reverse the court of appeals' judgment insofar as it reversed the trial court's termination orders,[40] and affirm the judgment of the trial court.

See Tex. Fam. Code §§ 263.301 -.307 (governing permanency hearings).

In re K.S.L. , 499 S.W.3d 109, 114 (Tex. App.-San Antonio 2016). The court of appeals affirmed the trial court's order appointing the Department permanent managing conservator of K.S.L. Id.

Tex. Fam. Code § 161.103.

See id. § 151.001(a).

Id. § 161.211(c).

Tex. Workers' Comp. Ins. Fund v. Del Indus., Inc. , 35 S.W.3d 591, 593 (Tex. 2000).

In re K.S.L. , 499 S.W.3d at 112 (quoting In re A.H. , 414 S.W.3d 802, 806 (Tex. App.-San Antonio 2013, no pet.) ).

627 S.W.2d 390, 394 (Tex. 1982).

Id.

Our holding in Brown comports with common sense. Where a parent, despite the typically powerful parent-child bond, is willing to voluntarily terminate the relationship, that willingness can itself be evidence that termination is in the child's best interest. Such willingness may derive from an altruistic belief that the parent is simply incapable of providing care the child deserves-or, to be sure, it may derive from more selfish motives. Either way, such willingness suggests that severing the bond is appropriate. It is difficult to imagine much stronger evidence than a parent's sworn admission that relinquishment is in a child's best interest and that the parent does so "freely, voluntarily, and permanently." Parents of ordinary fitness would of course do the opposite and fiercely resist having their children taken from them.

455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

Id. at 747-48, 102 S.Ct. 1388.

See Brown , 627 S.W.2d at 392 (quoting statute requiring best-interest finding); Act of May 24, 1995, 74th Leg., R.S., ch. 709, 1995 Tex. Gen. Laws 3745 (adding requirement of proof by clear and convincing evidence).

Tex. Fam. Code § 101.007.

See Act of May 28, 1997, 75th Leg., R.S., ch. 601, 1997 Tex. Gen. Laws 2118 (adding section 161.211 to the Family Code ); see also supra note 13.

452 U.S. 18, 31, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).

Id. at 24, 101 S.Ct. 2153.

455 U.S. at 753, 102 S.Ct. 1388.

Id. See also Morrissey v. Brewer , 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

452 U.S. at 29, 32, 101 S.Ct. 2153.

M.L.B. v. S.L.J. , 519 U.S. 102, 111, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996) (quoting Rinaldi v. Yeager , 384 U.S. 305, 310, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966) ).

Id. at 120, 117 S.Ct. 555.

Id. at 111, 117 S.Ct. 555 (quoting Ross v. Moffitt , 417 U.S. 600, 607, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974) ).

C.S.F. v. Tex. Dep't of Family & Protective Servs. , 505 S.W.3d 618, 619 (Tex. 2016). See also Tex. Fam. Code § 107.013(a)(1).

In re K.M.L. , 443 S.W.3d 101, 108 (Tex. 2014) (citations, internal quotation marks omitted).

See United States v. Mezzanatto , 513 U.S. 196, 201, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995) (stating that "[a] criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution" and citing authority that the double jeopardy defense is waivable by pretrial agreement and that a knowing and voluntary guilty plea waives the privilege against compulsory self-incrimination, the right to a jury trial, and the right to confront one's accusers).

See In re Winship , 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ("Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

See Brady v. United States , 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.").

424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

E.g. , In re B.L.D. , 113 S.W.3d 340, 351-55 (Tex. 2003) ; In re J.F.C. , 96 S.W.3d 256, 272-74 (Tex. 2002).

Mathews , 424 U.S at 335, 96 S.Ct. 893 ; see also B.L.D. , 113 S.W.3d at 352.

Lassiter , 452 U.S. at 27, 101 S.Ct. 2153.

Santosky , 455 U.S. at 760-61, 102 S.Ct. 1388 ("But until the State proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship. Thus, at the factfinding, the interests of the child and his natural parents coincide to favor use of error-reducing procedures.") (footnote omitted); Lassiter , 452 U.S. at 27, 101 S.Ct. 2153 ("Since the State has an urgent interest in the welfare of the child, it shares the parent's interest in an accurate and just decision."). We do not suggest that the interests of the parents and the State in parental-termination cases are always identical or that those interests can never diverge. See In re A.B. , 437 S.W.3d 498, 505 (Tex. 2014) (stating that "in parental termination cases, the parents' fundamental interest in maintaining custody and control of their children is balanced against the State's fundamental interest in protecting the welfare of the child"); In re M.S. , 115 S.W.3d 534, 548-49 (Tex. 2003) ("Once it is clear that the parent cannot or will not provide a safe, stable family environment, then the State's interest in protecting the welfare of the child shifts to establishing that safe, stable, and permanent environment for the child elsewhere.").

See Tex. Fam. Code § 153.002 ("The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child."); In re B.L.D. , 113 S.W.3d at 353 ("The State's foremost interest in suits affecting the parent-child relationship is the best interest of the child.").

In re J.F.C. , 96 S.W.3d at 274 ; see also In re L.M.I. , 119 S.W.3d 707, 711 (Tex. 2003) (noting "the Legislature's intent that cases terminating parental rights be expeditiously resolved, thus promoting the child's interest in a final decision and thus placement in a safe and stable home") (brackets, quotation marks omitted); In re M.S. , 115 S.W.3d at 548 ("The State's fundamental interest in parental-rights cases is to protect the best interest of the child. This interest is aligned with another of the child's interest-an interest in a final decision on termination so that adoption to a stable home or return to the parents is not unduly prolonged.") (footnote omitted); In re B.L.D. , 113 S.W.3d at 353 ("In termination cases, judicial economy is not just a policy-it is a statutory mandate. To ensure that children's lives are not kept in limbo while judicial processes crawl forward, the Legislature requires that termination proceedings conclude at the trial level within a year and a half from the date of a child's removal from the parent.") (citing Tex. Fam. Code § 263.401 ).

See Tex. Fam. Code §§ 109.002(a) ; 263.401; 263.405(a).

Id. § 263.307(a).

452 U.S. at 32, 101 S.Ct. 2153.

Lehman v. Lycoming Cnty. Children's Servs. Agency , 458 U.S. 502, 513, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982).

The court of appeals affirmed the part of the trial court's judgment appointing the Department permanent managing conservator of K.S.L. We affirm the court of appeals' judgment in this regard.