# IN THE SUPREME COURT OF TEXAS

No. 18-0908

IN THE INTEREST OF D.S., A CHILD

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS

**Argued February 27, 2020**

JUSTICE GUZMAN delivered the opinion of the Court.

JUSTICE LEHRMANN filed a concurring opinion, in which JUSTICE DEVINE and JUSTICE BUSBY joined.

When parental rights are terminated based on an affidavit voluntarily relinquishing those rights, section 161.211(c) of the Texas Family Code limits collateral attacks on the termination order to specific grounds: fraud, duress, or coercion in the execution of the affidavit.[1] In this termination case, Father asserts a final order can be challenged on an additional ground: a trial court's erroneous determination that Texas is the child's "home state." The trial court rejected Father's bill of review as a collateral attack effectively barred by section 161.211(c), but the court of appeals reversed, finding a conflict between section 161.211(c) and provisions in Chapter 152 of the Family Code,[2] commonly known as the Uniform Child Custody Jurisdiction and

---

[1] TEX. FAM. CODE § 161.211(c).

[2] 555 S.W.3d 301, 315-16 (Tex. App.—Dallas 2018).

Enforcement Act (UCCJEA).[3] The court held that construing section 161.211(c) as barring a collateral challenge to the trial court's Chapter 152 findings in voluntary relinquishment cases would contravene the Legislature's intent in adopting the UCCJEA's jurisdictional provisions.[4]

We hold section 161.211(c)'s plain language forecloses a collateral attack premised on an erroneous home-state determination even if that determination implicates a trial court's subject-matter jurisdiction. Texas has a compelling interest in resolving termination suits economically, efficiently, and with finality. By enacting section 161.211(c), our Legislature made a clear policy choice: when parents choose to relinquish their parental rights in accordance with the "exacting" and "detailed" statutory requirements for doing so,[5] a collateral attack is limited to specific grounds relating to whether the relinquishment was knowing and voluntary.[6] Chapter 152 jurisdictional defects are not one of the enumerated grounds for challenging an order effectuating a voluntary termination of parental rights. Accordingly, we hold the trial court properly rejected Father's bill of review and the court of appeals erred in reversing the trial court's judgment. We therefore reverse and render judgment denying Father's request for relief.

## I. Background

D.S., a minor child, was born in January 2015 in Boston, Massachusetts. Her parents were married in Texas about eight years before her birth and lived in Texas for most of their marriage. However, shortly before D.S.'s birth, Father moved to Boston to pursue a job opportunity. Mother

---

[3] TEX. FAM. CODE § 152.101.

[4] 555 S.W.3d at 315.

[5] *See In re K.S.L.*, 538 S.W.3d 107, 108-09 (Tex. 2017).

[6] TEX. FAM. CODE § 161.211(c).

remained in Texas, maintaining employment at the same law firm and living in the family home, but she routinely visited Father in Massachusetts.

After D.S. was born, the family stayed in Massachusetts until Mother's maternity leave expired. Mother then moved back to Texas to resume her job, and D.S. split time between homes in both Texas and Massachusetts. In September 2015, when D.S. was eight months old, Mother filed for divorce in Collin County, Texas. She alleged that D.S. (1) was a child born of the marriage, (2) was not under the continuing jurisdiction of another state court, and (3) lived with Mother in Collin County. Father did not deny these allegations.[7]

At some point during the divorce proceedings, Father executed an affidavit voluntarily relinquishing his parental rights. Father's unrevoked affidavit provided the basis for Mother's amended divorce petition seeking to sever the parent–child relationship. Because Father was not a Texas resident at the time, Mother had the burden of pleading facts demonstrating the trial court's authority to exercise jurisdiction over the suit affecting the parent–child relationship.[8]

After considering the evidence,[9] the trial court found it had jurisdiction over the proceeding and the parties involved and that no other court had continuing, exclusive jurisdiction over D.S. The court also found termination of Father's parental rights was in D.S.'s best interest. The court signed the agreed order terminating Father's parental rights on October 21, 2015. A few days

---

[7] *See id.* § 152.209(a) (in a suit affecting the parent–child relationship, "*each party* . . . shall give information, if reasonably ascertainable, under oath as to the child's present address or whereabouts, the places where the child has lived during the last five years, and the names and present addresses of the persons with whom the child has lived during that period" (emphasis added)).

[8] *See id.*

[9] The record from this hearing is not before the Court; therefore, we must presume the evidence presented was sufficient to support the trial court's jurisdictional findings. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 782 (Tex. 2005) (a reporter's record is necessary for evidentiary hearings); *Piotrowski v. Minns*, 873 S.W.2d 368, 370-71 (Tex. 1993) ("At every stage of the proceedings in the trial court, litigants must exercise some diligence to ensure that a record of any error will be available in the event that an appeal will be necessary.").

later, the court issued a *nunc pro tunc* order bearing Father's signature. Mother was appointed D.S.'s sole managing conservator.

Six months later, Father filed two bill-of-review suits: one seeking to set aside the trial court's termination order and the other arguing, in part, that revisiting child custody would necessitate a new division of the parties' marital estate. Only the former is at issue in this appeal, and in that bill-of-review proceeding, Father claimed, for the first time, that the trial court lacked subject-matter jurisdiction because Massachusetts—not Texas—was D.S.'s home state when the termination proceeding commenced.

The trial court denied relief in both bill-of-review suits following a bench trial. In written findings of fact and conclusions of law, the court determined Father "failed to prove any element of his bill of review,"[10] so his "challenge to the Agreed Order of Termination of Parent–Child Relationship [was] a collateral attack rather than a direct attack." Concerning D.S.'s home state, the trial court found that extrinsic evidence established (1) D.S. had no home state when the termination proceedings commenced; (2) Massachusetts had been D.S.'s home state within six months of commencement; and (3) under Family Code section 152.201, Texas courts lacked jurisdiction "to make an initial child custody determination." However, because the underlying termination proceeding did not reveal any jurisdictional defect, "the clear and definite recitals" on jurisdictional matters in the Agreed Order of Termination of Parent–Child Relationship were

---

[10] A bill of review is a direct attack on a judgment that is no longer appealable or subject to a motion for new trial. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 504 (Tex. 2010). To obtain an equitable bill of review, a "petitioner must ordinarily plead and prove (1) a meritorious defense to the cause of action alleged to support the judgment, (2) that the petitioner was prevented from making by the fraud, accident or wrongful act of his or her opponent, and (3) the petitioner was not negligent." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751-52 (Tex. 2003).

"conclusive of all issues of jurisdiction" in a collateral challenge.[11]  The court further concluded that (1) Father failed to prove his "unrevoked affidavit of relinquishment of parental rights was executed as a result of fraud, duress, or coercion"; and (2) the bills of review were barred as a matter of law under the affirmative defenses of estoppel, waiver, acceptance of the benefits, and unclean hands.

Father appealed the disposition of both bills.  As to the termination order, Father focused exclusively on collaterally attacking jurisdiction, pointing out that the bill-of-review court's home-state findings materially differed from the trial court's original jurisdictional findings.[12]  Claiming the new findings rendered the termination order void for lack of subject-matter jurisdiction, Father persuaded the court of appeals to reverse and vacate the termination order.[13]  Relying on the extrinsic evidence Father offered in the bill proceeding, the court of appeals adopted the bill-of-review court's home-state findings, concluded Texas was not D.S.'s home state, and held the termination order was void and susceptible to collateral attack.[14]  Though section 161.211(c) of the Texas Family Code expressly limits the grounds for challenging a voluntary-relinquishment termination, the court declined to construe the statute as precluding Father from challenging the termination order on jurisdictional grounds, opining that such a

---

[11] *See In re K.S.L.*, 538 S.W.3d 107, 115 (Tex. 2017) (when a termination order based on a voluntary relinquishment affidavit is later collaterally attacked, section 161.211(c) permits such an attack only if it relates to "whether the parent's waiver of parental rights was knowing and voluntary").  Subject to limited exceptions, this Court has held that courts are prohibited from considering extrinsic evidence in a collateral attack on a final judgment. *Templeton v. Ferguson*, 33 S.W. 329, 332-33 (1895); *Crawford v. McDonald*, 33 S.W. 325, 328 (1895).

[12] 555 S.W.3d 301, 311 (Tex. App.—Dallas 2018).

[13] *Id*. at 318.

[14] *Id*.

construction would create a conflict with the jurisdictional requirements in Chapter 152 of the Family Code.[15]

On appeal to this Court, the parties disagree about several matters, including (1) whether Father's collateral attack on the termination order was proper even though section 161.211(c) specifically constrains such challenges to grounds that were decided adversely to Father and then abandoned; and (2) whether extrinsic evidence is admissible to collaterally challenge an agreed termination judgment for lack of subject-matter jurisdiction when no jurisdictional defect is apparent from the record and the record establishes that the trial court considered jurisdictional evidence, concluded it had jurisdiction, and rendered a judgment regular on its face. Because the first issue is dispositive of the appeal, we do not reach the second.

## II. Discussion

"Collateral attacks" on orders terminating parental rights based on affidavits voluntarily relinquishing those rights are limited to "fraud, duress, or coercion in the execution of the [relinquishment] affidavit."[16] By limiting collateral attacks to grounds relating to "whether the parent's waiver of parental rights was knowing and voluntary,"[17] section 161.211(c) enhances reliability and finality of voluntary termination orders, allowing families to move forward with their lives with a measure of certainty.

In a collateral challenge to the agreed order severing his relationship with D.S., Father abandoned the three statutorily authorized grounds in favor of one not enumerated in the statute— lack of jurisdiction under Chapter 152. Father argues that section 161.211(c)'s limitations apply

---

[15] *Id.*

[16] TEX. FAM. CODE § 161.211(c).

[17] *In re K.S.L.*, 538 S.W.3d 107, 115 (Tex. 2017).

6

only if the trial court had jurisdiction to make a custody determination under Chapter 152 and does not preclude his collateral attack on the agreed termination order because (1) Texas was not D.S.'s home state when the termination proceeding commenced and (2) the trial court did not identify any other statutory basis for exercising jurisdiction under Chapter 152.

Mother contends the court of appeals judicially amended section 161.211(c) contrary to its plain and unambiguous language by reversing the trial court's bill-of-review judgment on the basis that Texas was not D.S.'s home state when Father's rights were voluntarily terminated. In Mother's view, the trial court satisfied its obligation to make a jurisdictional determination under Chapter 152, and even if the trial court's conclusion on that matter was wrong, section 161.211(c) forecloses review of the court's finding to the same extent as any other statutorily required finding.[18] We address these arguments in turn.

## A. Collateral Attacks

Collateral attacks on final judgments are generally impermissible because "it is the policy of the law to give finality to the judgments of the courts."[19] Such attacks are disfavored because they "run[] counter to [our] strong policy of finality" by "attempt[ing] to bypass the appellate process in challenging the integrity of a judgment."[20] "A collateral attack seeks to avoid the binding effect of a judgment in order to obtain specific relief that the judgment currently

---

[18] *Id.* at 110-11 (section 161.211(c) did not authorize parents' evidence-sufficiency challenges to the trial court's statutorily required best-interest finding, but those challenges also failed on the merits).

[19] *Browning v. Prostok*, 165 S.W.3d 336, 345 (Tex. 2005).

[20] *Id.* at 346.

impedes."[21]  "Only a void judgment may be collaterally attacked."[22]  A judgment is void, rather than voidable, "when it is apparent that the court rendering judgment 'had no jurisdiction [over] the parties or property, no jurisdiction [over] the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act.'"[23]

Finality is uniquely important in family law matters, especially parental-termination proceedings.[24]  "[T]he private interest affected [in parental termination proceedings] is commanding" for all litigants involved.[25]  Indeed, "[f]ew judgments have more substantial future ramifications than those affecting parentage."[26]  Like their parents, children have a compelling interest in finality and stability.  As we have long acknowledged, children's lives cannot be "kept in limbo while judicial processes crawl forward[.]"[27]  The State has important interests as well, including protecting the welfare of the child and reducing the cost and burden of parental-termination proceedings.[28]

---

[21] *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012).

[22] *Prostok*, 165 S.W.3d at 346.

[23] *Id.* (quoting *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985) (orig. proceeding)).

[24] *See In re K.S.L.*, 538 S.W.3d 107, 116 (Tex. 2017) ("Termination of parental rights is a grave decision, and a searching and painstaking legal process is required—rightly—by Texas law.  But . . . the needs of the child are not best served by a legal process that fosters delay and unrestrained second-guessing."); *see also In re M.S.*, 115 S.W.3d 534, 548 (Tex. 2003) (finality ensures "that adoption to a stable home or return to the parents is not unduly prolonged").

[25] *Santosky v. Kramer*, 455 U.S. 745, 758 (1982).

[26] *In re E.R.*, 385 S.W.3d 552, 568 (Tex. 2012).

[27] *In re B.L.D.*, 113 S.W.3d 340, 353 (Tex. 2003).

[28] *Santosky*, 455 U.S. at 766 ("Two state interests are at stake in parental rights termination proceedings—a *parens patriae* interest in preserving and promoting the welfare of the child and a fiscal and administrative interest in reducing the cost and burden of such proceedings."); *M.S.*, 115 S.W.3d at 548 ("The State's fundamental interest in parental-rights termination cases is to protect the best interest of the child.").

## B. Uniform Child Custody Jurisdiction and Enforcement Act

The UCCJEA, which has been adopted by most states, helps ensure custody determinations are "rendered in [the] State which can best decide the case in the interest of the child."[29] The law is designed to deter child abductions and minimize "the shifting of children from State to State," which can adversely affect their well-being.[30] The UCCJEA advances an overarching objective of expediency and stability in an increasingly mobile world by helping prevent manipulation of the system and undue complication of child-custody disputes, which can occur when a child is moved from one state to another.

Though Texas district courts have general jurisdiction over child-custody matters,[31] our Legislature adopted the UCCJEA in 1999 as Chapter 152 of the Family Code,[32] and the UCCJEA articulates circumstances under which a court has, or loses, "jurisdiction" over child-custody determinations.[33] Jurisdiction is statutorily withdrawn if neither the UCCJEA's home-state provision nor any statutory alternative basis for jurisdiction is satisfied.[34] For purposes of the UCCJEA, jurisdiction is determined at the time child-custody proceedings commence.[35]

---

[29] *See* UNIF. CHILD CUSTODY JURISDICTION & ENF'T ACT, § 101 cmt., 9 U.L.A. 657 (NAT'L CONFERENCE OF COMM'RS ON UNIF. STATE LAWS 1999).

[30] *Id.*

[31] *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000) ("A Texas district court . . . is a court of general jurisdiction.").

[32] Act of Apr. 22, 1999, 76th Leg., R.S., ch. 34, § 1, 1999 Tex. Gen. Laws 52 (codified at TEX. FAM. CODE §§ 152.001–.317).

[33] *See* TEX. FAM. CODE § 152.201(a).

[34] *Id*. §§ 152.201, .204.

[35] *Id*. § 152.201(a); *see* Patricia M. Hoff, *The Uniform Child-Custody Jurisdiction and Enforcement Act*, U.S. DEP'T OF JUSTICE (Dec. 2001), ncjrs.gov/pdffiles1/ojjdp/189181.pdf.

Under section 152.201, a Texas court has jurisdiction to make initial child-custody determinations (1) if Texas is the child's home state; (2) in certain situations where a court of another state does not have jurisdiction or declines to exercise jurisdiction on the ground that this state is the more convenient forum; or (3) no court of any other state would have jurisdiction under the criteria set out in the statute.[36] The statute defines "home state" as the state where the child has lived with a parent or guardian "for at least six consecutive months immediately before the commencement of a child custody proceeding."[37] To determine a child's home state, the key inquiry is the child's physical presence in the state; the parents' legal residency is a lesser consideration.[38] Texas courts also have temporary emergency jurisdiction over a child present in this state when it is "necessary . . . to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse."[39]

On appeal to this Court, Mother primarily argues the trial court's home-state determination was conclusive and binding under Family Code section 161.211(c). Because we agree, and for the additional reasons stated in Section II.D, we do not address Mother's alternative arguments that (1) Chapter 152's use of the term "jurisdiction" does not refer to subject-matter jurisdiction, and (2) if it does, Father's threats to harm her and D.S. imbued the trial court with temporary emergency jurisdiction to make an initial custody determination that became final as provided in

---

[36] TEX. FAM. CODE § 152.201(a).

[37] *Id.* § 152.102(7).

[38] *Powell v. Stover*, 165 S.W.3d 322, 326 (Tex. 2005) ("The purposes behind the UCCJEA further suggest that a child's physical location is the central factor to be considered when determining a child's home state.").

[39] TEX. FAM. CODE § 152.204(a).

the statute.[40]  Whatever meaning "jurisdiction" may have in Chapter 152, the collateral attack here is statutorily barred.

## C. Section 161.211(c)

Statutory construction is a question of law we review de novo.[41]  Our objective is to ascertain and give effect to the Legislature's intent,[42] and "the truest manifestation of what lawmakers intended is what they enacted."[43]  In construing a statute, we assume the Legislature chose statutory language with care,[44] included each chosen word for a purpose, and purposefully omitted all other words.[45]

When parents have chosen to surrender their rights to their children, section 161.211(c) limits the grounds for direct or collateral attack:

> A direct or collateral attack on an order terminating parental rights based on an unrevoked affidavit of relinquishment of parental rights or affidavit of waiver of interest in a child is limited to issues relating to fraud, duress, or coercion in the execution of the affidavit.[46]

---

[40] *Id.* § 152.204(b).

[41] *Pedernal Energy, LLC v. Bruington Eng'g, Ltd.*, 536 S.W.3d 487, 491 (Tex. 2017).

[42] *Id.*

[43] *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013).

[44] *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 701 (Tex. 2015) (orig. proceeding).

[45] *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).

[46] TEX. FAM. CODE § 161.211(c).  We do not address whether the statute permissibly limits jurisdictional challenges in direct attacks.  Our analysis is confined to the legislatively enacted constraints on a collateral attack because that is the only type of challenge at issue here.  We note that Father neither relies on the statutorily permitted grounds for assailing the trial court's judgment nor identifies a constitutional basis for depriving the statute of effect.  Furthermore, no constitutional provision expressly precludes the Legislature from limiting collateral attacks challenging legislatively enacted requirements, like those in Chapter 152.

The permissible grounds for collaterally challenging a termination order help ensure voluntary relinquishments are, in fact, voluntary "while also addressing the need for finality and promptness in these proceedings."[47] Our recent decisions examining section 161.211(c) confirm that the statute prohibits post-judgment attacks based on unenumerated grounds, even if the trial court erroneously determined a statutory prerequisite was satisfied.[48]

Like this case, *In re K.S.L.* involved the interplay between section 161.211(c) and another statutory provision.[49] The statute at issue there was Family Code section 161.001, which prohibits involuntary severance of the parent–child relationship absent (1) grounds for termination and (2) a finding that termination is in the child's best interest.[50] In *K.S.L.*, the parents' voluntary affidavits of relinquishment provided statutory grounds for termination, but in post-judgment proceedings, they argued section 161.211(c) could not bar their evidence-sufficiency challenges to the trial court's best-interest finding because that finding is a statutory prerequisite to termination.[51] We rejected the parents' argument and held section 161.211(c) applied.[52] We explained that the trial court complied with section 161.001(b)(2) by making the requisite best-interest finding before terminating the parent–child relationship.[53] Once that finding was made, section 161.211(c) made it conclusive, precluding courts from looking behind the trial court's judgment to determine

---

[47] *See In re K.S.L.*, 538 S.W.3d 107, 115 (Tex. 2017).

[48] *Id.* at 110-11; *see In re M.M.*, 538 S.W.3d 540, 541 (Tex. 2017).

[49] *K.S.L.*, 538 S.W.3d at 109-11 (discussing section 161.001(b), which governs grounds for termination orders).

[50] *See* TEX. FAM. CODE § 161.001(a).

[51] *K.S.L.*, 538 S.W.3d at 110-11; *see* TEX. FAM. CODE § 161.001(b).

[52] *K.S.L.*, 538 S.W.3d at 111.

[53] *Id.* at 111-12.

whether or not the determination was correct.[54]  Because the termination order was based on

affidavits of voluntary relinquishment, section 161.211(c) provided limited grounds for reviewing

the order, and those grounds did not include failure to prove satisfaction of a statutory

prerequisite.[55]

The analysis in *Moore v. Brown*, a case from the Third Court of Appeals, is even more on

point.[56]  In *Moore*, a child, M.K.B., was born in Virginia.[57]  Before M.K.B.'s birth, the biological

parents found a Texas family—the Browns, who were distant relatives of M.K.B.'s biological

parents—to adopt the child.[58]  M.K.B. was given the surname "Brown," which was also listed on

the child's birth certificate.[59]  The biological parents executed various documents laying the

groundwork for adoption and undertook several steps for interim custody with a court in

Virginia.[60]  An agreed order granted the Browns custody of M.K.B., authorized the hospital to

discharge M.K.B. to their care, and gave them permission to return to Texas with the child.[61]

One document the parties executed was, as here, an affidavit of voluntary relinquishment

of parental rights that satisfied the Texas Family Code's exacting requirements.[62]  As a predicate

---

[54] *Id.*

[55] *Id.* at 111.

[56] 408 S.W.3d 423 (Tex. App.—Austin 2013, pet. denied).

[57] *Id.* at 426.

[58] *Id.*

[59] *Id.*

[60] *Id.* at 426-27.

[61] *Id.* at 427.

[62] *Id.* at 427-28.

to consummating the adoption, the Browns brought M.K.B. home to Texas and sought to terminate the parent–child relationship based on the biological parents' affidavits.[63]  Parental rights were terminated April 30, 2009.[64]  One month and four days later, the biological parents returned to court in Virginia and reasserted their parental rights to M.K.B.[65]  They did the same in the Texas court where the Browns were petitioning for adoption.[66]  The Browns' adoption order was ultimately signed in Texas on June 11, 2009.[67]

In their bid to regain custody of M.K.B., the biological parents attacked the Texas termination and adoption orders on the basis that the Texas court lacked jurisdiction under the UCCJEA.[68]  They alleged the Virginia court had acquired continuing, exclusive jurisdiction over M.K.B. under the UCCJEA based on the interim custody order it signed before M.K.B. was discharged from the hospital and relocated to Texas.[69]

The court of appeals declined to overturn the termination order because the parents challenged the order on grounds not specifically permitted by section 161.211(c).[70]  Despite the challenge to jurisdiction under the UCCJEA, the *Moore* court held that "the Legislature meant

---

[63] *Id*. at 428-29.

[64] *Id*. at 429.

[65] *Id*. at 428-29.

[66] *Id*.

[67] *Id*. at 430.

[68] *Id*. at 430-31.

[69] *Id*.

[70] *Id*. at 432-33.  The court of appeals struggled to define the Moores' attack as either direct or collateral.  Ultimately, it determined that portions of their attacks on the termination and adoption orders were direct while others were collateral, but such designations were irrelevant because there were "independently dispositive statutory bars to all of the Moores' claims[.]"  *Id.* at 433.

what it said—'a direct or collateral attack . . .' (which . . . can include jurisdictional challenges) . . . 'on an order terminating parental rights based on an unrevoked affidavit of relinquishment of parental rights . . . is limited to issues related to fraud, duress, or coercion in the execution of the affidavit' (which a challenge based on the UCCJEA is not)."[71]

We agree with the *Moore* court that the Legislature's "unqualified use of 'direct' and 'collateral' attack denotes intent that [section 161.211(c)] have sweeping, all-encompassing breadth, applying to complaints of everything from procedural errors to jurisdictional defects."[72] As we said in *K.S.L.*, section 161.211(c) plainly and unmistakably limits collateral attacks on agreed termination orders to specific grounds, and in this case, Father abandoned those grounds. Father's argument against applying section 161.211(c) rests on the assumption that the Legislature intended to exempt erroneous Chapter 152 determinations from the statute's ambit without saying so. We reject that assumption and hold parties cannot, contrary to the statute's plain language, relitigate a trial court's Chapter 152 finding through a post-judgment collateral attack. The "[L]egislature legislates by legislating," not by inaction or silence,[73] and in section 161.211(c), the Legislature chose to exempt only those challenges pertaining to whether a parent *voluntarily* executed the relinquishment affidavit. The Legislature has the authority, within constitutional limits, to restrict post-judgment jurisdictional challenges via collateral attack, and we are not at liberty to judicially expand the statute's plain language.[74]

---

[71] *Id*. at 438-39 (quoting TEX. FAM. CODE § 161.211(c)).

[72] *Id*. at 435.

[73] *Sanchez v. Schindler*, 651 S.W.2d 249, 252 (Tex. 1983).

[74] The judiciary has no power to legislate. *See Harris Cty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 846-47 (Tex. 2009); *Garcia v. Tex. Instruments, Inc.*, 610 S.W.2d 456, 462 (Tex. 1980); *Simmons v. Arnim*, 220 S.W. 66, 70 (Tex. 1920).

Construing the statute according to its express language does not produce absurd consequences. Parties can, indeed must, provide information for the trial court to make an appropriate Chapter 152 determination.[75] Section 161.211(c) quite reasonably precludes subsequent bites at the apple that threaten finality in perpetuity. The Legislature exercised care in choosing the permissible grounds for a collateral attack, enacting detailed procedures for ensuring that terminations are knowing and voluntary while advancing important interests in finality and promptness.[76] Section 161.211(c) reflects a carefully considered balance, and we are neither inclined nor permitted to second-guess the Legislature's reasonable policy decisions.[77] In this case, the trial court determined that Chapter 152 conferred jurisdiction, and that determination is not subject to collateral attack.

Father urges us to adopt the court of appeals' analysis as necessary to avoid a conflict between section 161.211(c) and Chapter 152 that would effectively give a parent no recourse if "one party is gaming the system and the other party files an affidavit of relinquishment[.]" He claims Mother's position allows parents "to evade the court with home-state jurisdiction over [the] child" without fear of a jurisdictional challenge. We are not persuaded by Father's arguments. Chapter 152 and section 161.211(c) can—and must—be read in harmony.[78] Chapter 152 requires the trial court to determine if it may exercise jurisdiction before rendering a voluntary

---

[75] *See* TEX. FAM. CODE § 152.209(a).

[76] *In re K.S.L.*, 538 S.W.3d 107, 115 (Tex. 2017).

[77] *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011); *Harris Cty. Hosp. Dist.*, 283 S.W.3d at 846-47.

[78] *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 565 (Tex. 1984) ("Generally, courts are to construe statutes so as to harmonize with other relevant laws, if possible.").

termination,[79] and the trial court here did so. Section 161.211(c), on the other hand, applies to review of the trial court's Chapter 152 findings after the court has terminated parental rights based on a voluntary relinquishment affidavit.[80] When, as here, the trial court ascertained jurisdiction under Chapter 152 following an evidentiary hearing and issued a termination order with the parties' consent, section 161.211(c) bars a challenge assailing the trial court's determination.

### D. Unaddressed Issues

We acknowledge the parties' excellent and thorough briefing debating the meaning of the word "jurisdiction" in the UCCJEA and discussing whether jurisdiction in this case is satisfied on some statutory basis other than home-state jurisdiction. We observe that of the states that have considered the jurisdictional issue, some refer to the UCCJEA as a subject-matter-jurisdiction statute,[81] while others do not.[82] The issue is not settled.[83] We also note that the record from the termination case is not part of the record in the bill-of-review suit, so we cannot discern whether alternative bases for jurisdiction were established by the parties or considered by the trial judge when proceedings commenced. Although the parties invite us to address these jurisdictional

---

[79] *See* TEX. FAM. CODE §§ 152.201, .204; *see also id*. §§ 152.207, .210.

[80] *See id*. § 161.211(c).

[81] *See, e.g.*, *In re J.C.*, 832 S.E.2d 91, 101 (W. Va. 2019); *Rosen v. Celebrezze*, 883 N.E.2d 420, 429 (Ohio 2008); *Harshberger v. Harshberger*, 724 N.W.2d 148, 153-54 (N.D. 2006); *V.C. v. L.P.*, 179 A.3d 95, 99 (Pa. Super. Ct. 2018); *S.C. Dep't of Soc. Servs. v. Tran*, 792 S.E.2d 254, 259-60 (S.C. Ct. App. 2016).

[82] *See, e.g.*, *McCormick v. Robinson*, 28 N.E.3d 795, 803 (Ill. 2015); *Kenda v. Pleskovic*, 39 A.3d 1249, 1256-67 (D.C. 2012); *Hightower v. Meyers*, 304 S.W.3d 727, 733-34 (Mo. 2010).

[83] Both the former and latter categories of cases fall victim to imprecise use of the word "jurisdiction" contrary to the modern trend toward reducing the vulnerability of final judgments to collateral attack based on want of subject-matter jurisdiction. *See Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76-77 (Tex. 2000) (overruling prior precedent that distinguished between statutory and common law subject-matter jurisdiction). Moreover, of the cases declaring UCCJEA to be a jurisdictional statute, *see supra* n. 81, none devote analysis to *why* the statute is jurisdictional.

questions, we decline to do so because applying section 161.211(c)'s plain language fully disposes of this appeal.[84]

### III. Conclusion

A parent's right to the "companionship, care, custody, and management of his or her children is an interest far more precious than any property right."[85]  But the law recognizes that these precious rights may be waived, and when they are, the grounds for setting aside that waiver are limited.  Under the Family Code, a parent may seek to set aside a termination order secured by a voluntary relinquishment affidavit only on the grounds that the affidavit was procured by fraud, duress, or coercion.[86]  Because Father lost on those grounds and did not appeal that ruling, we hold section 161.211(c) bars his collateral attack.  We therefore reverse the court of appeals' judgment and render judgment denying Father the relief requested.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED:**  May 8, 2020

---

[84] *Tex. Ass'n of Bus. v. Tex. Air Control Bd*., 852 S.W.2d 440, 444 (Tex. 1993) (recognizing Texas courts have no jurisdiction to render opinions that, rather than remedying an actual or imminent harm, decide abstract questions of law without binding the parties).

[85] *Santosky v. Kramer*, 455 U.S. 745, 758-59 (1982) (internal citations omitted).

[86] TEX. FAM. CODE § 161.211(c).