# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-23-00469-CV

---

**T. D., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

**FROM THE 207TH DISTRICT COURT OF COMAL COUNTY**
**NO. C2022-1912B, THE HONORABLE MELISSA MCCLENAHAN, JUDGE PRESIDING**

---

### O P I N I O N

T.D. (Mother) appeals the trial court's Final Order of Termination, rendered after a bench trial, terminating her parental rights to her daughters M.E.D. (Older Daughter) and N.A.D.M. (Younger Daughter).[1]  In five appellate issues, some with discrete subparts, Mother maintains that (1) the trial court's noncompliance with statutory provisions and its conduct of the trial on the merits deprived her of due process; (2) she was not given effective notice of the full adversary hearing or of the trial; (3) the evidence was insufficient to support termination under Paragraph (O), *see* Tex. Fam. Code § 161.001(b)(1)(O); (4) the evidence was insufficient to support termination under Paragraph (E), *see id.* § 161.001(b)(1)(E); and (5) the trial court should

---

[1] The order also terminated the parental rights to the two daughters of their father, Mother's husband.  The father is no longer a party to this appeal.

not have appointed the Department of Family and Protective Services as the children's managing conservator. We affirm.

## BACKGROUND

Older Daughter was 12 years old and Younger Daughter 10 at the time of trial. The family had been involved with the Department in the past, and this time, Department involvement began with a report of neglectful supervision of the children. The family was found living in a warehouse without running water or working heat or air conditioning and with only a generator for electricity. Mother tested positive for methamphetamine, and her husband—the children's father—admitted that he had been using methamphetamine. The children looked underfed and had not been in school for some time. The Department placed the children with a licensed foster placement, who now wants to adopt the children. The children are excited at the prospect of living with the foster placement permanently.

The Department prepared Family Service Plans for both Mother and the children's father and asked each parent to comply with their Plan's requests if the parents wished the children to be returned to them. Mother's Plan required her to submit to random drug-testing. The trial court later made the parents' Plans orders of the court. Both parents refused outright to participate in their Plans, including refusing all requested drug tests until the trial court said that it would have the parents arrested if they did not test. The parents then took that one drug test, and it came back positive for each parent for methamphetamine. The Department filed this suit for termination of Mother's and the father's parental rights to the children.

As the suit progressed, the trial court appointed an attorney to represent Mother, but Mother later asked the court to discharge that attorney and for permission to represent herself

2

in the suit or for the children's father, who is not a lawyer, to represent her. The court told Mother that the father could not represent her.

That condition—Mother's self-representation—continued through the trial on the merits, and Mother did not request the help of an attorney. Mother and the father showed up to the trial late but were allowed to participate once they arrived. After trial, the trial court signed its Final Order of Termination, ruling that both parents' rights be terminated and that termination of Mother's rights was properly based on statutory predicate grounds Paragraph (E) and Paragraph (O). Mother now appeals and is represented by appointed appellate counsel.

## DISCUSSION

### I. Mother's due-process complaints are either unmeritorious or unpreserved.

In her first issue, Mother maintains that the trial court denied her due process. She argues that she was denied due process because of two sets of acts or omissions by the court: (1) its failure to comply with Family Code sections 107.013 and 263.0061(a) and (2) its conduct of the trial on the merits.

#### A. *Mother has not shown that the trial court was noncompliant with Sections 107.013 and 263.0061(a).*

Section 107.013 deals with the right to counsel, providing for appointment of counsel for indigent parents under certain circumstances. *See* Tex. Fam. Code § 107.013(a), (d), (e). It begins, "In a suit filed by a governmental entity under Subtitle E in which termination of the parent–child relationship . . . is requested, the court shall appoint an attorney ad litem to represent the interests of . . . an indigent parent of the child who responds in opposition to the termination." *Id.* § 107.013(a)(1). It continues, addressing necessary procedures for appointing an attorney:

3

The court shall require a parent who claims indigence under Subsection (a) to file an affidavit of indigence in accordance with Rule 145(b) of the Texas Rules of Civil Procedure before the court may conduct a hearing to determine the parent's indigence under this section. . . . If the court determines the parent is indigent, the court shall appoint an attorney ad litem to represent the parent.

*Id.* § 107.013(d).

Section 261.0061(a) deals with the parent's right to notice of the right to counsel and to notice of the right to appointed counsel in certain circumstances. The statute provides:

At the status hearing under Subchapter C and at each permanency hearing under Subchapter D held after the date the court renders a temporary order appointing the department as temporary managing conservator of a child, the court shall inform each parent not represented by an attorney of:

(1) the right to be represented by an attorney; and

(2) if a parent is indigent and appears in opposition to the suit, the right to a court-appointed attorney

We next recount the relevant portions of the record to determine whether the trial court complied with these statutory directives.

After the Department filed this suit, soon after Mother was served with citation, the trial court ordered appointment of an attorney to represent Mother but in the same order "defer[red] its findings as to whether [Mother] is indigent, with the right to a court appointed attorney." Two months later, and while Mother was still represented by the appointed attorney, the court signed a Temporary Order Following Adversary Hearing that both (a) found Mother to be indigent and (b) informed Mother of her right to an appointed attorney conditioned both on "sign[ing] an affidavit of indigence" and potentially on the court's "hear[ing] evidence to determine if [Mother is] indigent." (Formatting altered.) About three months after that order, the court held an initial permanency hearing, and both Mother and her appointed attorney appeared at the hearing. The

4

court did not notify Mother during the hearing that Mother was entitled to appointed counsel. Mother told the court that she did not want the attorney to represent her anymore and that she wanted to represent herself or the children's father to represent her. The court told Mother that the father, who is not a lawyer, could not represent her. Soon after the hearing, the court signed an Initial Permanency Hearing Order Before Final Order that discharged Mother's attorney from the representation. There is no reporter's record for any hearings occurring between this initial permanency hearing and trial, so we presume that the trial court did not violate Mother's rights at any such hearings. At trial, the proceedings began and continued for "almost 30 minutes," according to the trial court, before Mother and the father appeared. After they appeared, the trial continued with more witness testimony, and after trial, the court rendered its judgment terminating Mother's parental rights to Older Daughter and Younger Daughter. The court did not notify Mother during the trial that Mother was entitled to appointed counsel. There is no affidavit of indigence by Mother in the record, and at no point after Mother's appointed attorney was discharged did Mother request from the court the assistance of an attorney.

Based on this record, the trial court did not fail to comply with either Section 107.013 or Section 261.0061(a). *See* Tex. Fam. Code §§ 107.013, 261.0061(a); *In re B.C.*, 592 S.W.3d 133, 134, 136–37 (Tex. 2019) (per curiam); *A.G. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00502-CV, 2022 WL 17982121, at *5 n.6 (Tex. App.—Austin Dec. 29, 2022, no pet.) (mem. op.); *In re B.C.*, No. 02-22-00256-CV, 2022 WL 17172338, at *5 (Tex. App.—Fort Worth Nov. 23, 2022, pet. denied) (mem. op.); *In re S.C.*, No. 09-21-00325-CV, 2022 WL 1037912, at *15 (Tex. App.—Beaumont Apr. 7, 2022, no pet.) (mem. op.); *see also In re K.S.L.*, 538 S.W.3d 107, 112 & n.16 (Tex. 2017) ("[D]ue process d[oes] not require the appointment of counsel in every parental-termination proceeding." (citing *Lassiter v. Department of Soc. Servs.*,

5

452 U.S. 18, 31 (1981))); *B.L.M. v. J.H.M.*, No. 03-14-00050-CV, 2014 WL 3562559, at *11 & n.8 (Tex. App.—Austin July 17, 2014, pet. denied) (mem. op.) (contrasting status hearings with "the termination trial"). Consistent with the above statutory requirements, the trial court appointed Mother counsel who represented her until Mother advised the trial court that she no longer wanted counsel to represent her. After the trial court allowed her attorney to withdraw based on her request, Mother never requested counsel again. While Mother was not admonished of her right to counsel at her trial, at that point in the case, the court was not required to do so. *See* Tex. Fam. Code § 263.0061(a); *A.G.*, 2022 WL 17982121, at *5 (stating that "better practice" would be for trial court to admonish parent of right to counsel at trial on merits but recognizing "that is not what the Texas Family Code currently requires"). We overrule the portions of Mother's first issue that involve Sections 107.013 and 263.0061(a).

### B. *Mother's due-process arguments about the conduct of the trial are either unmeritorious or unpreserved.*

Next, Mother maintains that the trial court's conduct of the trial on the merits violated her due-process rights. She argues that she was denied a meaningful opportunity to be heard because the court did not allow her to make a statement to the court or the chance to put on a case and did not ask her what "things" should be "clarified" as Mother alluded to them in her closing statement.

We first note that the record runs counter to much of what Mother argues that she was prevented from doing at trial. Mother actually was allowed to make a statement to the court if she wished. The court invited both Mother and the father to make a statement. Later in the trial, after the father made a closing statement after all witnesses finished testifying, the court invited anyone else to make a closing statement. Mother took the court up on that invitation, making the

6

following statement: "There are many things that should be clarified here. Many things." After this statement—and with no sign in the record that the court cut Mother off or otherwise denied her the chance to speak for any longer—the court responded: "They would have been clarified all along. They would have been clarified all along, if you would have just simply come to the hearings and worked your services. Okay?"

Otherwise during the trial, the court asked Mother if she had any witnesses of her own to call, and Mother responded that she did not. And after the direct examinations of the witnesses, the court with only one exception asked Mother if she wished to cross-examine, and Mother each time responded that she did not. The one exception was after the father's questioning of the Department investigator. The investigator had finished testifying before Mother and the father appeared at the trial. The court allowed the father to recall the investigator to testify, and when the father finished his examination of the investigator, the court asked no one present, including Mother, whether they had any further questions for the investigator.

Thus, comparing the record of trial against Mother's appellate complaints about the court's conduct of the trial reveals that much of what Mother complains about did not happen the way she says it did. Contrary to her arguments, she was not prevented from putting on a case or from making a statement to the court. We therefore overrule the relevant portions of her first issue. But consistent with her arguments, it is true that the court did not ask her (a) if she wanted to examine the Department investigator after the father's examination of that witness ended and (b) what she meant in her closing statement by the "many things that should be clarified here."

Because "[a]s a rule" we are to decide constitutional questions only "when we cannot resolve issues on nonconstitutional grounds," "we first determine whether our law on preservation—including our rules of procedure and our common-law doctrine of fundamental

7

error—permit review of" Mother's due-process complaints about what happened at trial. *See In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003). The preservation rules require an appellant to have "made to the trial court by a timely request, objection, or motion" a statement of "the grounds for the ruling that the [now-appellant] sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Tex. R. App. P. 33.1(a)(1)(A). The preservation rules reach even constitutional complaints, like lack of due process, in parental-rights-termination cases. *See In re K.A.F.*, 160 S.W.3d 923, 928 (Tex. 2005) ("[T]he rules governing error preservation must be followed in cases involving termination of parental rights, as in other cases in which a complaint is based on constitutional error."); *see also In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003); *B.L.D.*, 113 S.W.3d at 352.

Mother did nothing in the trial court to make the court aware of any due-process complaint based on not being asked whether she wanted to cross-examine the investigator and not being asked about what she meant in her closing statement that "many things . . . should be clarified." Because Mother did not preserve any such complaints in the trial court, the preservation rules prevent us from reviewing those complaints here. *See L.M.I.*, 119 S.W.3d at 710–11. The preservation rules themselves satisfy due process. *See B.L.D.*, 113 S.W.3d at 351–54. And Mother on appeal gives no reason for extending the fundamental-error doctrine to these complaints. *See id.* at 350–51. We thus do not reach this last portion of Mother's first issue.

## II. Mother has not shown reversible error in the purported lack of notice of the adversary hearing and has not preserved her complaint about lack of notice of trial.

In her second issue, Mother maintains that she was not given effective notice of the adversary hearing or of the trial on the merits. In the portion of this issue about the adversary hearing, she argues that she received no notice and that she was served with citation via documents

that had not been translated into Spanish. These arguments appear to rely on an incomplete view of the record. Mother argues that notice of the adversary hearing was ineffective because the hearing was set for November 3, 2022, and although she was served with citation on November 1, 2022, the return of service does not indicate that Mother was served also with notice of the impending adversary hearing. But a more complete view of the record shows that the adversary hearing was postponed to give Mother's appointed attorney "time to respond to the petition and prepare for the hearing." The postponement was effected by the same November 2022 court order that appointed the attorney to represent Mother. Then according to the court's February 14, 2023 Temporary Order Following Adversary Hearing, the adversary hearing was held not in November 2022 but over three days in December 2022 and January 2023. The same order also says both Mother and her attorney appeared at the three-day adversary hearing.

To secure a reversal on appeal, the appellant bears the burden of showing that the trial court's purported error either "probably caused the rendition of an improper judgment" or "probably prevented the appellant from properly presenting the case to the court of appeals." *See* Tex. R. App. P. 44.1(a); *In re J.P.-L.*, 592 S.W.3d 559, 577, 588–89 (Tex. App.—Fort Worth 2019, pet. denied). In light of the full record, we conclude that Mother has not shown how the lack of a reference in the November 2022 return of service to the adversary-hearing setting that was later postponed probably caused the rendition of an improper judgment or probably prevented Mother from properly presenting the case to us. *See* Tex. R. App. P. 44.1(a); *see also In re C.C.*, No. 02-23-00128-CV, 2023 WL 5967898, at *8 (Tex. App.—Fort Worth Sept. 14, 2023, no pet.) (mem. op.) (concluding that appellate issue about trial court's purported "failure to secure [parent–appellant's] attendance at the pre-trial conference" failed under harm requirement of Rule 44.1(a)). By the time the adversary hearing occurred, Mother was represented by appointed

9

counsel, and both Mother and her appointed counsel appeared at the adversary hearing. Mother's arguments fail to show how she was harmed by lack of notice of a hearing that she and her attorney both attended without objection.

Based on similar reasoning, we also conclude that Mother has not shown how the failure to have the citation with which she was served translated into Spanish probably caused the rendition of an improper judgment or probably prevented Mother from properly presenting the case to us. After she was served with the English-language citation, Mother was appointed an attorney, who represented her until the court honored Mother's request that the attorney be discharged and Mother be allowed to represent herself. Before his discharge from the representation, the attorney sought on Mother's behalf the appointment of an interpreter "to be available at all hearings," and there was indeed an interpreter present to interpret for Mother at both of the proceedings for which we have reporter's records, including the trial on the merits. The lack of a Spanish-language translation of the November 2022 citation thus does not support the harm necessary for a reversal. *See* Tex. R. App. P. 44.1(a). We overrule this first portion of Mother's second issue.

In the rest of her second issue, Mother argues that she received no notice of trial, which deprived her of due process. This matter is also one that may not be reviewed on appeal if not preserved in the trial court. *See In re Marriage of Mohamed*, No. 14-18-01029-CV, 2021 WL 3629245, at *6 (Tex. App.—Houston [14th Dist.] Aug. 17, 2021, no pet.) (mem. op.); *In re M.M.M.*, No. 05-19-00392-CV, 2019 WL 4744694, at *3–4 (Tex. App.—Dallas Sept. 30, 2019, pet. denied) (mem. op.); *In re D.R.O.*, No. 10-17-00378-CV, 2019 WL 1716330, at *3–4 (Tex. App.—Waco Apr. 17, 2019, no pet.) (mem. op.). Notice of a trial setting "may be either actual or constructive, as long as it is reasonably calculated under the circumstances to apprise the

10

party of the pendency of the action and to provide an opportunity to present objections." *M.M.M.*, 2019 WL 4744694, at \*4. Rule of Civil Procedure 245 provides for 45 days' notice of a first trial setting, which Mother argues she did not receive, but a "violation of Rule 245 is not, in and of itself . . . , a due process violation." *D.R.O.*, 2019 WL 1716330, at \*4. An appellate complaint about insufficient notice of trial "under Rule 245 or the due process clause" is subject to the preservation rules. *Id.*; *accord Marriage of Mohamed*, 2021 WL 3629245, at \*6; *M.M.M.*, 2019 WL 4744694, at \*3–4. "Complaints regarding a lack of proper notice of a . . . trial setting are generally waived when the complaining party received notice of the proceeding, appeared and participated, and failed to lodge a timely objection or request a continuance." *Marriage of Mohamed*, 2021 WL 3629245, at \*6; *accord M.M.M.*, 2019 WL 4744694, at \*4; *D.R.O.*, 2019 WL 1716330, at \*4.

Mother appeared at the trial and participated or was at least offered opportunities to participate. Yet nothing in the record suggests that Mother made the trial court aware of a complaint about lack of notice of trial. Mother thus has not preserved this complaint for appellate review, *see Marriage of Mohamed*, 2021 WL 3629245, at \*6; *M.M.M.*, 2019 WL 4744694, at \*3–4; *D.R.O.*, 2019 WL 1716330, at \*3–4, and we do not reach this last portion of her second issue.

## III. The evidence was legally and factually sufficient to support termination under Paragraph (E).

In her third and fourth appellate issues, Mother maintains that the evidence was insufficient to support the two statutory predicate grounds on which the trial court based the termination of her parental rights—Paragraphs (E) and (O). *See* Tex. Fam. Code § 161.001(b)(1)(E), (O). Mother does not challenge the trial court's best-interest finding supporting termination. *See id.* § 161.001(b)(2). Successful proof of only one statutory predicate

ground is all that is needed together with a best-interest finding to support termination, so we will review only the Paragraph (E) endangerment ground here. *See In re N.G.*, 577 S.W.3d 230, 232, 234–35 (Tex. 2019) (per curiam).

### A. *Applicable law and standard of review*

To terminate parental rights, the Department must prove both one of the statutory predicate grounds and that termination is in the best interest of the child. *See* Tex. Fam. Code § 161.001(b)(1), (2); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The Department must prove both elements by clear and convincing evidence. *See* Tex. Fam. Code § 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *accord In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002).

Legal-sufficiency review of the evidence to support termination requires reviewing all the evidence in the light most favorable to the finding under attack and considering undisputed contrary evidence to decide whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *See In re A.C.*, 560 S.W.3d 624, 630–31 (Tex. 2018). "Factual sufficiency, in comparison, requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding." *Id.* at 631. "Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id.* When reviewing the evidence, we must "provide due deference to the decisions of the factfinder, who, having full opportunity to observe witness

testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014).

### B.  Statutory predicate grounds—Paragraph (E) endangering conduct

Paragraph (E) applies when a parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code § 161.001(b)(1)(E). For these purposes, "'[e]ndanger' means 'to expose to loss or injury; to jeopardize.'" *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam) (quoting *Texas Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). "Although '"endanger" means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury,'" *id.* (quoting *Boyd*, 727 S.W.2d at 533), or even that the conduct happen in the child's presence, *Pruitt v. Texas Dep't of Fam. & Protective Servs.*, No. 03-10-00089-CV, 2010 WL 5463861, at *4 (Tex. App.—Austin Dec. 23, 2010, no pet.) (mem. op.). "Endangerment does not have to be established as an independent proposition, but can be inferred from parental misconduct alone," and courts may look to conduct "before the child's birth and both before and after the child has been removed by the Department." *Id.* "Conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being." *Id.*

The relevant inquiry under Paragraph (E) is whether the endangerment of the child's well-being was the direct result of a person's conduct, including acts, omissions, or failures to act. *See T.M. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00174-CV, 2021 WL 4692471, at *6 (Tex. App.—Austin Oct. 8, 2021, pet. denied) (mem. op.); *In re J.F.-G.*,

13

612 S.W.3d 373, 382 (Tex. App.—Waco 2020), *aff'd*, 627 S.W.3d 304 (Tex. 2021). If the endangering person is someone other than the appealing parent, then the parent generally must have known of the other person's endangering conduct. *See* Tex. Fam. Code § 161.001(b)(1)(E); *J.F.-G.*, 612 S.W.3d at 384; *In re F.E.N.*, 542 S.W.3d 752, 764 (Tex. App.—Houston [14th Dist.] 2018), *pet. denied*, 579 S.W.3d 74 (Tex. 2019) (per curiam). "Termination under subsection (E) requires more than a single act or omission, and the Department must show a voluntary, deliberate, and conscious course of conduct by the parent, considering a parent's actions both before and after the child was removed from the home." *T.M.*, 2021 WL 4692471, at *6.

### C.     *The evidence was sufficient to support termination under Paragraph (E).*

The evidence here showed three sets of circumstances relevant under Paragraph (E). First was evidence of illegal-drug use by Mother. "[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as" endangering conduct. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). Drug use "exposes the child to the possibility that the parent may be impaired or imprisoned."[2] *J.M. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00274-CV, 2021 WL 5225432, at *5 (Tex. App.—Austin Nov. 10, 2021, pet. denied) (mem. op.) (quoting *M.D. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00531-CV, 2021 WL 1704258, at *8 (Tex. App.—Austin Apr. 30, 2021, no pet.) (mem. op.)). Evidence that the parent used illegal drugs while a suit to terminate the parent's rights was pending is especially supportive of termination under Paragraph (E). *See T.M.*, 2021 WL 4692471, at *6.

---

[2] So do a parent's other criminal acts even if not drug-related, and Mother was arrested for criminal trespass while this suit was ongoing.

When the children were removed, Mother tested positive for methamphetamine. Her explanation to the Department investigator was that the children's father "would drug her with the methamphetamines," but the trial court as factfinder had a right to give no weight to Mother's self-serving statement, plus Mother seemed to the investigator to be unconcerned about this purported conduct by the father, who himself admitted to using methamphetamine. Then after the removal and while this suit was pending, Mother tested positive for amphetamine and methamphetamine, and so did the father. The couple underwent only this drug test, after missing many more requested by the Department, because the trial court had said that it would have the parents arrested otherwise. The factfinder may infer from a parent's missing Department-requested illegal-drug tests during a parental-rights-termination suit that the tests missed would have come up positive. *See J.M. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00187-CV, 2022 WL 7163637, at *12 (Tex. App.—Austin Oct. 13, 2022, no pet.) (mem. op.); *In re C.A.B.*, 289 S.W.3d 874, 885 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

Second, another way that parents can endanger their children by conduct is by subjecting the children to uncertainty and instability. *See S.S. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00695-CV, 2022 WL 2542007, at *11 (Tex. App.—Austin July 8, 2022, pet. denied) (mem. op.). "Neglect can be just as dangerous to the well-being of a child as direct physical abuse." *V.P. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-19-00531-CV, 2020 WL 544797, at *4 (Tex. App.—Austin Feb. 4, 2020, no pet.) (mem. op.) (quoting *In re M.L.L.*, 573 S.W.3d 353, 363 (Tex. App.—El Paso 2019, no pet.)). Parents exhibit such endangering conduct when failing to have their children educated and when subjecting their children to unsafe and unstable housing arrangements. *See C.M.M. v. Department of Fam. & Protective Servs.*, No. 14-21-00702-CV, 2022 WL 1789925, at *13 (Tex. App.—Houston [14th Dist.] June 2, 2022,

15

pet. denied) (mem. op.); *In re Z.A.S.*, No. 02-11-00040-CV, 2011 WL 3795231, at \*15–16 (Tex. App.—Fort Worth Aug. 25, 2011, no pet.) (mem. op.).  Here, Mother and the father had the family living in a warehouse.  The Department investigator described the living arrangement as unsafe, and she and others testified that the warehouse had the family car parked inside it; contained scattered buckets of gasoline; had a generator as the only source of electricity; lacked running water, heating, and air conditioning; and had only minimal food.  The children slept on a mattress without bedding on the ground, and they had belongings like clothes but nothing much else.  The children's guardian *ad litem* testified that Mother and the father had neglected the children via the "unhealthy home setting."  The children said that they were not in school, and a permanency specialist testified that they had been out of school for over three years.  Younger Daughter needed to go through a school grade one year behind the grade for her age group "so that she could catch up."  Both daughters were underweight when first coming into Department care, but the foster placement fixed that issue.

Finally, a parent's refusal to participate in a Department-requested Family Service Plan can be considered in the endangerment analysis.  *See E.J. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-23-00104-CV, 2023 WL 4139041, at \*5 (Tex. App.—Austin June 23, 2023, pet. denied) (mem. op.); *In re J.A.V.*, 632 S.W.3d 121, 132 (Tex. App.—El Paso 2021, no pet.).  The Department here prepared a Family Service Plan for Mother that requested that she take parenting courses, psychological and psychosocial assessments, and drug and alcohol assessments; attend AA and NA meetings; and submit to random drug-testing.  Mother did virtually none of this, even telling Department personnel that she refused to participate in the Plan.  And the one drug test she submitted to was, as we have noted, at the trial court's compulsion.

16

In the face of this evidence, Mother's arguments on appeal are unavailing. She argues that the Department improperly elicited testimony that the children had not received their immunizations, but we need not consider this evidence in our sufficiency review to conclude that the evidence was sufficient. She similarly argues that the evidence that the children had not been in school is "*prohibited* as a reason for removal" under Family Code section 262.116, but the only provisions of that statute even marginally relevant here concern "evidence that the parent . . . homeschooled the child [or] is economically disadvantaged." *See* Tex. Fam. Code § 262.116(a)(1), (2). We see nothing in the evidence referring to homeschooling of the daughters or requiring that any endangerment finding here be based on Mother's economic conditions.

Mother next argues that "[n]ot one witness testified regarding the effect that Mother's positive drug tests had on her girls." But evidence of endangerment does not require the child to have actually suffered injury or the endangering conduct to have happened in the child's presence. *See M.C.*, 917 S.W.2d at 269; *Pruitt*, 2010 WL 5463861, at *4. And illegal-drug use amounts to endangerment evidence when, as here, the drug use "exposes the child to the possibility that the parent may be impaired or imprisoned," *see J.M.*, 2021 WL 5225432, at *5 (quoting *M.D.*, 2021 WL 1704258, at *8), and the parent used illegal drugs while a suit to terminate the parent's rights was pending, *see T.M.*, 2021 WL 4692471, at *6.

Finally, Mother relies on the Department's having adduced evidence of suspected domestic violence by the children's father against her, but that evidence is unnecessary to recount for purposes of our evidence-sufficiency review. In all then, under the applicable legal- and factual-sufficiency standards, we conclude that the evidence was sufficient to support termination under Paragraph (E). We thus overrule Mother's fourth issue and need not reach her third,

17

which attacks the Paragraph (O) finding for insufficient evidence. *See* Tex. R. App. P. 47.1; *N.G.*, 577 S.W.3d at 232–35.

## IV. Mother now lacks standing to challenge the conservatorship appointment.

In her fifth issue, Mother maintains that the trial court should not have named the Department as the children's managing conservator. Mother lacks standing to advance this issue because her parental rights to the children have been terminated and we have rejected (or cannot reach) all of her challenges to the portion of the trial court's judgment that terminated her parental rights. *See M.S. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-23-00396-CV, 2023 WL 8852161, at *8 (Tex. App.—Austin Dec. 22, 2023, no pet. h.) (mem. op.); *M.E. v. Texas Dep't of Fam. & Protective Servs.*, Nos. 03-23-00184-CV, 03-23-00191-CV, 2023 WL 6164865, at *19 (Tex. App.—Austin Sept. 22, 2023, no pet.) (mem. op.). We thus do not reach this last issue.

## CONCLUSION

We affirm the trial court's Final Order of Termination.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Kelly and Theofanis

Affirmed

Filed: January 26, 2024