

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00352-CV

———————————————

IN THE INTEREST OF K.T., A CHILD

On Appeal from the 231st District Court
Tarrant County, Texas
Trial Court No. 231-738590-23

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

## I. Introduction

Appellant Mother[1] used illegal drugs throughout her pregnancy with K.T., who tested positive for drugs when he was born in July 2023. The hospital gave K.T. morphine to improve his drug-withdrawal symptoms, and after K.T.'s release from the hospital, Mother requested and received K.T.'s placement with the family taking care of her twin sister's child.[2] In June 2024—a month before trial—Mother's hair-follicle drug test was positive for methamphetamine at 198,731 picograms per milligram, the highest concentration her caseworker had ever seen.[3]

Appellant Father had committed attempted possession of a controlled substance (methamphetamine), one gram or more but less than four grams, and unauthorized use of a vehicle in February 2023, and he was sentenced to 365 days'

---

[1]To protect the minor child's privacy, we use initials to identify him and pseudonyms to identify his parents. *See* Tex. R. App. P. 9.8(b); *see also* Tex. Fam. Code Ann. § 109.002(d).

[2]Witnesses for the Department of Family and Protective Services—which removed K.T. from his parents and became his managing conservator during the case—testified that this placement had met all of K.T.'s physical and emotional needs, that K.T. was "extremely bonded" with the family, and that the Department's plan was for K.T. to be adopted into the family.

[3]The threshold for testing positive for methamphetamine on a hair-follicle drug test is 500 picograms. *See In re L.L.*, No. 02-23-00132-CV, 2023 WL 5767483, at *4 (Tex. App.—Fort Worth Sept. 7, 2023, pet. denied) (mem. op.) (noting, in parental-rights-termination appeal, that the mother's "hair-follicle drug test was positive for methamphetamine at a level of 1,972 picograms per milligram—more than three times the 500-picogram threshold").

confinement for these offenses in May 2023 and was incarcerated when K.T. was born. He admitted that he had known that Mother was pregnant with K.T. when they used methamphetamine together before his confinement and that this had endangered K.T.'s health and safety. *See In re J.W.*, 645 S.W.3d 726, 750 & n.13 (Tex. 2022) (holding that father's knowledge of mother's drug use during pregnancy and his corresponding failure to try to protect the unborn child from the drug use's effects can contribute to an endangering environment, as can his actively participating in creating the endangering environment by using drugs with the mother, encouraging her drug use, or supplying her with drugs).

Father also conceded that he had consciously chosen to use drugs even though he knew that doing so could result in his arrest and confinement and thus inhibit his ability to be a father to K.T. Father had "messed up on probation" on a seven-year sentence from an Eastland County conviction for possession of methamphetamine from which he had a projected release date in December 2024 (the sentence's halfway point), and a possible release date in September 2024.

The trial court terminated Mother's parental rights to K.T., *see* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (N), (O), (P), (R), (2), and Father's parental rights to K.T., *see id.* §§ 161.001(b)(1)(D), (E), (N), (O), (2), .002(b)(1). Both parents have appealed, but neither challenges the trial court's substantive and best-interest findings.

Mother's appointed counsel has filed an *Anders* brief indicating that she has no meritorious grounds for appeal. *See Anders v. California*, 386 U.S. 738, 744, 87 S. Ct.

3

1396, 1400 (1967). Because our independent review of the record compels us to agree with her counsel, we affirm the trial court's judgment as to Mother.

In a single issue, Father complains that the trial court deprived him of due process when it denied his motion for an extension of the case's dismissal date. Because the trial court did not violate Father's due process rights by denying the extension, we affirm the trial court's judgment as to Father.

## II. Due Process

In his single issue, Father argues that the trial court denied him constitutionally guaranteed due process when it denied his motion for an extension of the dismissal date.

"When the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures." *In re E.R.*, 385 S.W.3d 552, 554 (Tex. 2012) (citing *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391–92 (1982)). But "just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re E.C.R.*, 402 S.W.3d 239, 240 (Tex. 2013). Further, parents can waive their constitutional and parental rights. *In re K.S.L.*, 538 S.W.3d 107, 113–14 (Tex. 2017).

Family Code Section 263.401(a) provides that if a trial court does not commence trial or grant an extension before the dismissal deadline in a government-

4

initiated suit affecting the parent–child relationship, the trial court's jurisdiction is terminated, and the suit is automatically dismissed without a court order. Tex. Fam. Code Ann. § 263.401(a). To retain the suit on the docket after the dismissal date, the trial court must find that "extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the [D]epartment and that continuing the appointment of the [D]epartment as temporary managing conservator is in the best interest of the child." *Id.* § 263.401(b). If the trial court makes those findings, it may retain the suit on the docket for a period not to exceed 180 days, and if it retains the suit, it must render an order scheduling the new automatic-dismissal date, making further temporary orders for the child's safety and welfare as necessary to avoid further delay in resolving the suit, and setting the trial on the merits on a date not later than the new 180-day deadline. *Id.* Per the statute, a court shall find extraordinary circumstances if (1) a parent of the child has made a good faith effort to successfully complete the service plan but needs additional time and (2) upon the service plan's completion, the court intends to order the child returned to the parent. *Id.* § 263.401(b-3).

We review the trial court's decision to deny an extension requested under Section 263.401(b) for an abuse of discretion. *In re C.G.*, No. 02-20-00087-CV, 2020 WL 4518590, at *2 (Tex. App.—Fort Worth Aug. 6, 2020, pet. denied) (mem. op.). The focus when analyzing if a trial court abused its discretion by denying an extension should be on the child's needs, whether extraordinary circumstances demand that the

5

child remain in the Department's care, and whether continuing that care is in the child's best interest. *In re I.B.*, No. 02-21-00358-CV, 2022 WL 1257133, at *3 (Tex. App.—Fort Worth Apr. 28, 2022, no pet.) (mem. op.). Actions that are considered to be the parent's fault will generally not constitute extraordinary circumstances. *Id.* Specifically, a parent's confinement or incarceration is generally considered to be the parent's fault and not an extraordinary circumstance. *C.G.*, 2020 WL 4518590, at *3. And "[t]he statute's clear preference is to complete the [state-involved termination] process within the one-year period." *In re A.J.M.*, 375 S.W.3d 599, 605 (Tex. App.—Fort Worth 2012, pet. denied) (op. on reh'g en banc).

Father argues that his incarceration before and during the case's pendency is an extraordinary circumstance making the extension necessary upon request. He relies on his possibility of parole to support his argument that the trial court abused its discretion by denying an extension and that the extension was necessary to provide him with due process. The Department responds that Father did not preserve his due process complaint; that, even if he had preserved his complaint, his procedural due process rights were not violated because he was given notice and an opportunity to be heard; and that the trial court did not abuse its discretion by denying the extension because Father provided no evidence of an extraordinary circumstance.

On August 11, 2023, the Department filed its original petition, and the trial court signed an ex parte order for protection in an emergency that day, making the case's dismissal date August 12, 2024. *See* Tex. Fam. Code Ann. § 263.401(a). Trial

6

was initially set for June 18, 2024, but on June 13, 2024, Father moved for an extension of the dismissal date of 180 days and for a continuance of the final trial date. Father asserted in his motion that he was "in the middle of a parole review," that he had been incarcerated at the time of K.T.'s removal, making him a non-offending parent, and that a 180-day extension would give him the time he needed to be released from incarceration and to complete his service plan. The motion was heard on June 18, 2024, and after the hearing,[4] the trial court granted a 30-day extension and rescheduled the trial for July 18, 2024, stating that it had considered the motion for continuance and had granted it.

Before trial began on July 18, Mother's counsel sought an extension for her client, who did not appear at trial. Father's counsel then concurred in the extension request and asserted that Father was "currently incarcerated" but "parole is ongoing right now, and so he's scheduled hopefully in the next month to be getting out of TDC." Father needed extra time "to get out of jail, to get a job, to get a place to live, and to do the services."

The Department's counsel replied that Father's incarceration did not meet the extraordinary-circumstances requirement when he was incarcerated "for no fault but

---

[4]Father's attorney sent a letter on June 15, 2024, to confirm the hearing set for June 18, 2024, at 9:30 a.m. Our clerk's office has confirmed with the court reporter that the hearing was not recorded.

his own and has had no relationship with this child who's basically been born and immediately placed into foster care." The child's ad litem attorney added,

> As to the father, he's been in jail and we haven't had -- we've had a stable placement for the child, so we haven't looked at . . . paternal relatives or anything . . . . [O]ngoing criminal activity is not gonna [sic] be stable for the child either, so I have to defer to the Court on that.

Father's counsel then argued that Father had been incarcerated "this entire time" and had not had the opportunity to try to reach family reunification and that granting the extension would give "six more months of the child to have an opportunity" to have a parent in his life.

The Department's counsel replied that Father's incarceration was not Father's first mistake but rather part of a continuing criminal history "dating back to 2015," when Father "had a possession of a controlled substance for methamphetamine," and that his criminal history did not warrant an extension in this case. The trial court denied the requested extension.

To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if not apparent from the request's, objection's, or motion's context. Tex. R. App. P. 33.1(a)(1)(A). The objecting party must also get a ruling—either express or implied—from the trial court. Tex. R. App. P. 33.1(a)(2)(A), (b); *see Lenz v. Lenz,* 79 S.W.3d 10, 13 (Tex. 2002). And the complaint on appeal must match that

presented in the trial court. *In re J.C.*, 594 S.W.3d 466, 473 (Tex. App.—Fort Worth 2019, no pet.); *see Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997).

Father did not raise due process in his June 2024 extension motion or during the extension discussion before trial. In his motion for new trial, he did not mention the extension but stated, without elaboration, in his fifth issue, "Termination of [Father's] parental rights violates his constitutional due process." Accordingly, because it is not apparent from the context before, during, or after the trial that Father was attempting to raise a due process challenge related to the denial of his requested extension, we conclude that he has not preserved his due process complaint for our review. *See* Tex. R. App. P. 33.1; *In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003) (reaching same conclusion on similar facts and pointing out that allowing appellate review of unpreserved error "would undermine the Legislature's intent that cases terminating parental rights be expeditiously resolved" to promote the child's interest in a final decision and placement in a safe and stable home).

Further, the trial court considered Father's request for an extension and Father's arguments in favor of it before denying the request. Thus, as the Department notes (and the record reflects), even if Father had preserved his due process complaint, he was afforded a meaningful opportunity to be heard and so was not denied procedural due process. *See Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 658 (Tex. 2004) ("Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner.");

9

*see also In re M.S.*, 115 S.W.3d 534, 547–49 (Tex. 2003) (discussing due process balancing test under *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903 (1976), as applied to termination-of-parental-rights cases).

And the record does not reflect that the trial court abused its discretion by denying the extension because Father presented the mere possibility of parole, and his incarceration did not constitute an extraordinary circumstance that would justify a continued delay for K.T. *See K.S.L.*, 538 S.W.3d at 116 ("But like other decisions where courts are called upon to use the powers of the government to interfere with the parent–child relationship, the needs of the child are not best served by a legal process that fosters delay and unrestrained second-guessing."). We overrule Father's sole issue.

## III. *Anders*

Mother's appointed appellate counsel filed an *Anders* brief indicating that Mother's appeal is frivolous and that there are no arguable grounds for appeal. *See Anders*, 386 U.S. at 744, 87 S. Ct. at 1400; *see also In re K.M.*, 98 S.W.3d 774, 776–77 (Tex. App.—Fort Worth 2003, order) (holding *Anders* procedures apply to parental termination appeals), *disp. on merits*, 2003 WL 2006583, at *1–3 (Tex. App.—Fort Worth May 1, 2003, no pet.) (per curiam) (mem. op.). Counsel's brief presents a professional evaluation of the record, an analysis of potential appellate issues, and a demonstration of why there are no meritorious grounds for reversal.

Counsel served the brief on Mother and informed her of her right to request the record and to file a pro se response to the *Anders* brief.[5]  *See Anders*, 386 U.S. at 744, 87 S. Ct. at 1400; *In re G.C.*, No. 02-20-00368-CV, 2021 WL 1823341, at *1 (Tex. App.—Fort Worth May 7, 2021, pet. denied) (mem. op.).  We similarly informed Mother of her rights.  Mother has not sought to access the appellate record and did not file a response.  The Department has declined to file a brief.[6]

We must independently examine the appellate record to determine if any arguable grounds for appeal exist.  *In re K.W.*, No. 02-23-00082-CV, 2023 WL 4289613, at *1 (Tex. App.—Fort Worth June 30, 2023, no pet.) (mem. op.); *see In re K.A.*, No. 02-23-00014-CV, 2023 WL 3251013, at *1 (Tex. App.—Fort Worth May 4, 2023, pet. ref'd) (mem. op.).  Having done so, our review confirms that Mother's appeal is frivolous.  *See K.W.*, 2023 WL 4289613, at *1 (conducting *Anders* analysis and

---

[5]Counsel also provided Mother with a motion for pro se access to the appellate record.  *See Kelly v. State*, 436 S.W.3d 313, 319–20 (Tex. Crim. App. 2014).  In our letter to Mother in response to counsel's filings, we provided to her the court's mailing address.

[6]In a footnote in its response to Father's brief, the Department states that it "agrees with Mother's appellate counsel that Mother has no meritorious grounds upon which to advance an appeal in this case" and that because Mother has not pointed to any arguable grounds for relief, it will not reply to the *Anders* brief.

reaching same conclusion); *K.A.*, 2023 WL 3251013, at *2 (same). Accordingly, we affirm the trial court's order terminating Mother's parental rights to K.T.[7]

## IV. Conclusion

Having overruled Father's sole issue and having agreed with Mother's counsel that she has no arguable issues, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: November 27, 2024

---

[7]Counsel remains appointed through proceedings in the Texas Supreme Court unless she is relieved of her duties for good cause. *In re P.M.*, 520 S.W.3d 24, 27–28 (Tex. 2016) (order).

12