# Supreme Court of Texas

No. 23-0067

Christine Lenore Stary,
*Petitioner*,

v.

Brady Neal Ethridge,
*Respondent*

On Petition for Review from the
Court of Appeals for the First District of Texas

**Argued October 29, 2024**

JUSTICE BLAND delivered the opinion of the Court.

Domestic violence protective orders protect family members from one of their own who turns abusive toward them. Such orders accomplish this protection in part by limiting or prohibiting the offender's contact with affected family members. Given the interests involved—protection of the vulnerable, interference in family relationships, and hefty criminal consequences upon violation of the order—these decisions must never be made lightly. Such orders should

be the least intrusive means to accomplish the measure of protection needed.

Recognizing as much, the law requires a court that issues a protective order lasting longer than two years to find felony-level violence, serious bodily injury, or repeated violations of prior protective orders. Unlike a criminal case, in which a factfinder must find the required elements beyond a reasonable doubt, a protective order application is heard as a civil proceeding, with the burden of proof merely that the required elements "more likely than not" occurred.

In this case, the trial court prohibited all contact between a mother and her children for the mother's lifetime. She appealed, contending that the order effectively terminates her parental rights to her children without adequate procedural safeguards, particularly the heightened evidentiary burden applicable in parental termination proceedings. The court of appeals affirmed, holding that protective orders leave some of a parent's ancillary rights and obligations intact; thus, prohibiting a parent's contact with her child, even permanently, requires no heightened procedural safeguards. We granted review.

We hold that constitutional due process requires clear and convincing evidence to support a protective order prohibiting contact between a parent and her children under the statute authorizing protective orders of longer than two years. An order prohibiting contact for such a lengthy duration profoundly interferes with a parent's fundamental right to exercise care, custody, and control of her children. In that paramount sense, lengthy protective orders are similar to the government's termination of parental rights. Our Court has required a

heightened evidentiary burden as a matter of constitutional procedural due process principles in such cases.

Accordingly, we reverse the court of appeals' judgment and remand this case to the trial court for further proceedings.

## I

Petitioner Christine Stary and Respondent Brady Ethridge divorced in 2018. They agreed to share custody of their three children.

In March 2020, police arrested Stary and charged her with felony injury to a child, alleging that she repeatedly struck her child's head against a hardwood floor. The State dismissed the criminal case in February 2025.

A week after Stary's arrest, Ethridge applied for a civil protective order, alleging that Stary had engaged in conduct constituting family violence. Ethridge sought an order lasting longer than two years, alleging that Stary had committed acts of felony family violence and had caused serious bodily injury to her children. The trial court issued an ex parte temporary order preventing Stary from communicating with or going near her children while the application was pending.

The trial court heard the application in September 2020. Ethridge testified to instances the children had recounted to him of Stary injuring them, including the incident leading to her arrest.[1] Ethridge introduced

---

[1] Ethridge did not witness the events he recounted to the trial court but he repeated what the children had reported to him under a hearsay exception in the Family Code. *See* Tex. Fam. Code § 84.006 (allowing hearsay statements by children under twelve describing alleged family violence to be admitted in protective order hearings to the same extent they can be admitted in suits affecting the parent-child relationship).

medical records corroborating the child's injuries from that incident. The trial court also interviewed the children in chambers.

Stary called a defense witness who testified that Stary was a gentle disciplinarian and had taught the witness's daughters in school without incident. Stary waived her Fifth Amendment right against self incrimination and testified on her own behalf. She denied injuring the children or committing family violence. She claimed, for example, that a sibling fight led to the criminal incident and she merely had tried to separate the children.

The trial court found that Stary had committed family violence that would be a felony if charged. Based on this finding, the court exercised its discretion to order protection in "permanent duration," lasting for Stary's lifetime.[2] Among other restrictions, the order prevents all contact between Stary and her children, to include speaking or "communicating directly" with them. The order further prohibits her from being within 100 yards of their presence or any location where they are "known by [Stary] to be."

Stary requested but did not receive findings of fact and conclusions of law. In her motion for new trial, she argued in relevant part that the "protective order is tantamount to a termination of parental rights" and that the trial court "violated [her] fundamental rights under the Constitution without sufficient due process." On

---

[2] *See id.* § 85.025(a-1) (authorizing courts to render protective orders for a period "that exceeds two years" if it finds that an act involving felony family violence was committed).

4

appeal, she urged that clear and convincing evidence should be necessary to support a protective order exceeding two years.

The court of appeals affirmed, holding that a lifetime protective order prohibiting a parent from contacting her children is not equivalent to terminating her parental rights.[3] For this reason, in its view, due process does not require clear and convincing evidence of the elements supporting a protective order lasting more than two years. One justice dissented, arguing that the order in this case effectively terminated Stary's parental rights by prohibiting contact with her children for the entirety of her life.[4]

## II

The United States and Texas Constitutions "provide[] heightened protection against government interference with certain fundamental rights and liberty interests."[5] One such fundamental right is that of parents to make decisions concerning the care, custody, and control of their children.[6] It is "cardinal" that this right reside first with parents,

---

[3] 695 S.W.3d 417, 427 (Tex. App.—Houston [1st Dist.] 2022).

[4] *Id.* at 438 (Farris, J., dissenting).

[5] *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000) plurality op.)).

[6] *In re C.J.C.*, 603 S.W.3d 804, 811–12 (Tex. 2020) (citing *Troxel*, 530 U.S. at 66). The parties agree, and our precedent confirms, that parents have a fundamental right to raise their children. Debates regarding the precise textual sources of that well-recognized right are not at issue here.

"whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."[7]

The Family Code authorizes protective orders to provide expedited, temporary protection upon a finding of family violence.[8] Upon a finding that family violence has occurred, a trial court may limit or prohibit contact with affected family members for up to two years.[9]

A trial court can extend a protective order beyond two years in limited circumstances. To order such protection, a trial court must additionally find that the person subject to the order: (1) "committed an act constituting a felony offense involving family violence against the applicant or a member of the applicant's family or household, regardless of whether the person has been charged with or convicted of the offense"; (2) "caused serious bodily injury to the applicant or a member of the applicant's family or household"; or (3) committed family violence,

---

[7] *In re G.M.*, 596 S.W.2d 846, 846 (Tex. 1980) (quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)).

[8] *See* Tex. Fam. Code § 81.001 ("A court shall render a protective order as provided by Section 85.001(b) if the court finds that family violence has occurred."); *id.* §§ 84.001(a), .002(a) (requiring courts to "set a date and time for the hearing . . . [not] later than the 14th day after the date the application is filed" or "not later than 20 days" in counties with more than 2.5 million people); *id.* § 85.025(a) ("Except as otherwise provided by this section, an order under this subtitle is effective: (1) for the period stated in the order, not to exceed two years; or (2) . . . until the second anniversary of the date the order was issued.").

[9] *Id.* § 85.022(b)(2) (allowing courts to prohibit the person found to have committed family violence from communicating in a threatening manner or, "if the court finds good cause, in any manner with a person protected by an order or a member of the family or household of a person protected by an order, except through the party's attorney or a person appointed by the court").

6

having been subject to two or more earlier protective orders involving the current applicant.[10]

In this Court, Stary contends that the trial court violated her constitutional right to due process by prohibiting all contact with her children for her lifetime without clear and convincing evidence to support its underlying findings. In her view, the order deprives her of her fundamental right to make decisions concerning the care, custody, and control of her children and thus is tantamount to termination of her parental rights. She argues that the court of appeals' interpretation creates a statutory loophole effectively allowing termination of parental rights without the heightened burden of proof due process requires.

Ethridge declined to appear before the court of appeals or this Court. Amicus counsel appointed to defend the court of appeals' judgment responds that protective orders of lengthy duration that prohibit a parent's contact with her children are not equivalent to termination of the parent's rights, even when they apply for a parent's lifetime. Amicus observes that such orders do not divest a parent of all rights as a termination order does. Moreover, the Family Code authorizes those subject to protective orders up to two opportunities to "request[] that the court review the protective order and determine whether there is a continuing need for the order."[11] In contrast, termination orders are permanent once final.[12]

---

[10] *Id.* § 85.025(a-1).

[11] *Id.* § 85.025(b)–(b-2).

[12] Termination orders "divest[] the parent and the child of all legal rights and duties with respect to each other" except for inheritance.

7

**A**

We first decide whether the protective order at issue deprived Stary of her fundamental right to make decisions concerning the care, custody, and control of her children. We review questions raising constitutional concerns de novo.[13]

The parties agree that Stary "has identified a 'liberty, property, or other enumerated interest' that is entitled to protection"—her parental rights.[14] Thus, we examine whether the order deprives Stary of that interest and, if so, whether the trial court failed to provide due process in doing so.[15]

The protective order bars Stary from any contact or presence in her children's lives for the rest of hers. In our Court's descriptions of a

---

*Id.* § 161.206(b). The statutory circumstances permitting a petition to reinstate parental rights are narrow. *See id.* § 161.302(a)–(b) (allowing for a petition for the reinstatement of parental rights to be filed only if the termination suit was filed by the Department of Family and Protective Services, at least two years have passed, and the child has not been adopted or is not the subject of a forthcoming adoption).

[13] *State v. Hodges*, 92 S.W.3d 489, 494 (Tex. 2002).

[14] *State v. Loe*, 692 S.W.3d 215, 229 (Tex. 2024) (quoting *Tex. S. Univ. v. Villarreal*, 620 S.W.3d 899, 905 (Tex. 2021)); *see In re R.J.G.*, 681 S.W.3d 370, 373 (Tex. 2023) ("Both this Court and the Supreme Court of the United States have long recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children. Thus, Texas law rightly requires that, before infringing on a parent's right to care for and have custody of her child, the State . . . must demonstrate to a court that governmental intrusion is warranted.").

[15] *See Bexar Cnty. Sheriff's Civ. Serv. Comm'n v. Davis*, 802 S.W.2d 659, 661 (Tex. 1990) (explaining that due process analysis requires inquiry into whether a party "was deprived of a protected interest and, if so, what process was due to safeguard that interest").

8

parent's fundamental right, a parent's communication and presence has been a necessary aspect of the exercise of the right. Early delineations of the right—to "establish a home and bring up children" and "enjoy a natural family unit"—implicitly rely upon a parent's presence or, at the least, communication with her children.[16] The right's modern recitation—"to make decisions concerning the care, *custody*, and control of [a parent's] children"—considers that parents have a right to decide who is present in their children's lives, including themselves.[17]

Concomitant with this positive right is the "high duty" of parents "to recognize and prepare [their children] for additional obligations."[18] Here, too, it is difficult to imagine that parents could carry out this duty without any presence in their child's life. Even the most rudimentary duties like "to recognize symptoms of illness and to seek and follow medical advice" cannot be accomplished if the parent is prohibited from seeing or speaking with her children for a lengthy duration.[19]

Parenthood, of course, is more than providing for a child's basic needs. It involves the "emotional attachments that derive from the intimacy of daily association" and the role these play in parents' duties

---

[16] *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572 (1972)); *G.M.*, 596 S.W.2d at 847.

[17] *C.J.C.*, 603 S.W.3d at 811 (emphasis added) (quoting *Troxel*, 530 U.S. at 66).

[18] *Id.* (alteration in original) (quoting *Parham v. J.R.*, 442 U.S. 584, 602 (1979)).

[19] *Miller ex rel. Miller v. HCA, Inc.*, 118 S.W.3d 758, 766 (Tex. 2003) (quoting *Parham*, 442 U.S. at 602).

to nurture and care for their children.[20] Yet these too are inhibited, if not severed outright, when a parent cannot enjoy association with her child for a prolonged or, in this case, a permanent amount of time.[21]

All together, our jurisprudence reflects "concepts of the family as a unit with broad parental authority over minor children" and an equally high duty to care for and nurture those children.[22] This rests "on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions."[23] When parents are barred from being present in their children's lives, they lose an integral component of their authority and their ability to carry out their duty to ensure their children's wellbeing. A parent cannot parent without presence.

Viewed through that lens, the imposition of a protective order prohibiting all contact between a parent and her child for more than two years deprives the parent of a fundamental right to make decisions concerning the care, custody, and control of that child.

In concluding otherwise, the court of appeals noted that Stary possesses auxiliary parental rights unaffected by the protective order.[24] It points out that, under her divorce decree, Stary may, among other

---

[20] *C.J.C.*, 603 S.W.3d at 819 (quoting *Smith v. Org. of Foster Fams. for Equal. & Reform*, 431 U.S. 816, 844 (1977)).

[21] *Cf. In re J.F.-G.*, 627 S.W.3d 304, 314–15 (Tex. 2021) (recognizing the damage that a parent's absence can cause to a child's emotional wellbeing).

[22] *Miller*, 118 S.W.3d at 766 (quoting *Parham*, 442 U.S. at 602).

[23] *Id.* (quoting *Parham*, 442 U.S. at 602).

[24] 695 S.W.3d at 427–28.

rights, receive information concerning the children's welfare, confer with Ethridge when making decisions about the children's welfare, and consent to medical procedures, subject to Ethridge's agreement. Retention of these peripheral rights, however, does not absolve the order from its removal of the paramount element of presence in Stary's relationship with her children. Without it, she is prohibited from exercising her core rights as a parent.

It is also doubtful that Stary can meaningfully exercise those auxiliary rights she retains. It is questionable the degree to which Stary truly can "consult" with doctors or teachers regarding her children while prohibited from being involved in their lives. Given that she cannot communicate directly with the children, it too would be difficult for Stary to manage her children's estates, obtain passports for them, or represent them in a legal action—some of the "many rights" that the court of appeals noted she retains under the divorce decree.[25]

**B**

Satisfied that the order deprives Stary of her fundamental right to parent, the next step of our inquiry is to determine what process is due.[26] The particular issue raised in this appeal is the applicable burden of proof a trial court must apply when evaluating the evidence

---

[25] *Id.* at 428.

[26] *See Loe*, 692 S.W.3d at 228 ("Second, if a protected interest is implicated, we consider whether the defendant followed due course of law in depriving the plaintiff of that interest.").

supporting a protective order prohibiting all contact between a parent and a child for over two years.[27]

The burden of proof functions to "instruct the factfinder concerning the degree of confidence our society thinks [one] should have in the correctness of factual conclusions for a particular type of adjudication."[28] Though civil cases ordinarily require that a preponderance of the evidence support an affirmative finding, a heightened clear and convincing standard applies when "particularly important individual interests" are at risk.[29] Such cases require a "degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."[30]

Our Court extended the clear and convincing standard to parental termination proceedings in *In re G.M.*[31] We reasoned that termination "is of such weight and gravity that due process requires the state to justify termination of the parent-child relationship by proof more

---

[27] At oral argument, counsel for Stary asserted other due process deficiencies. However, Stary did not present these complaints to the trial court, and thus they are not preserved for appellate review. Tex. R. App. P. 33.1.

[28] *G.M.*, 596 S.W.2d at 847 (quoting *Addington v. Texas*, 441 U.S. 418, 423 (1979)).

[29] *Id.* (quoting *Addington*, 441 U.S. at 424).

[30] *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979).

[31] 596 S.W.2d at 847.

12

substantial than a preponderance of the evidence."[32] The Legislature later incorporated this standard into the Family Code.[33]

To determine whether this heightened standard should extend to protective orders prohibiting a parent's contact with her children for more than two years, we consider: (1) "the private interests affected by the proceeding;" (2) "the risk of error created by the State's chosen procedure;" and (3) "the countervailing governmental interest supporting use of the challenged procedure."[34]

In the termination context, the United States Supreme Court has described a parent's private interest as a "commanding" one because the government seeks to end her exercise of a fundamental right.[35] In similar fashion, protective orders that prohibit contact for over two years "break the ties between a parent and child."[36] The order in this case goes even further as it prevents all contact even after the children reach the age of majority.[37]

---

[32] *Id.*

[33] *See* Tex. Fam. Code § 161.001(b).

[34] *In re J.F.C.*, 96 S.W.3d 256, 273 (Tex. 2002) (quoting *Santosky v. Kramer*, 455 U.S. 745, 754 (1982)). "We have applied this approach in a number of cases, including parental-termination cases." *In re K.S.L.*, 538 S.W.3d 107, 114 (Tex. 2017); *see also In re B.L.D.*, 113 S.W.3d 340, 352 (Tex. 2003) (applying the approach); *N.G.*, 577 S.W.3d at 236 (same).

[35] *J.F.C.*, 96 S.W.3d at 273 (quoting *Santosky*, 455 U.S. at 759).

[36] *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976).

[37] The Family Code statutes governing termination contain no prohibition on contact between parent and child once the child reaches the age of majority. No-contact protective orders, however, can exceed past the child's age of majority and thus can intervene in the parent–child relationship for a longer duration than termination.

Amicus counsel responds by noting that an affected parent may seek review of a protective order twice and this distinguishes no-contact protective orders from termination orders, which typically are final.[38] Two chances for review does not erase the fundamental similarity of these orders in imposing a "unique kind of deprivation" of a parent's fundamental right.[39] Not all protective orders exceeding two years last for a parent's lifetime as this one does. All concern the same private interest, however, in a proceeding that can deprive a parent of this interest for a significant period of time.[40] Parents face the exact "government interference with certain fundamental rights" for which we have held due process requires heightened protection.[41] A heightened

---

[38] *See* Tex. Fam. Code § 85.025(b)–(b-2) (allowing a person subject to a protective order to file a motion no earlier than one year after it was rendered requesting that the court review whether there is a continuing need for it and to do so one more time no earlier than a year after the first motion is denied); *id.* § 161.302(a)–(b) (allowing for a petition for the reinstatement of parental rights to be filed only if the termination suit was filed by the Department of Family and Protective Services, at least two years have passed, and the child has neither been adopted or is the subject of a forthcoming adoption).

[39] *B.L.D.*, 113 S.W.3d at 352 (quoting *Lassiter v. Dep't of Soc. Servs. of Durham Cnty.*, 452 U.S. 18, 27 (1981)).

[40] *See* Tex. Fam. Code § 85.025(a-1) (authorizing the trial court to enter an order for "a period that exceeds two years" upon making the requisite findings); *see also In re A.C.*, 560 S.W.3d 624, 629–30 (Tex. 2018) (describing a parent's fundamental right as "an interest far more precious than any property right" (quoting *Santosky*, 455 U.S. at 758–59)).

[41] *N.G.*, 577 S.W.3d at 235 (quoting *Troxel*, 530 U.S. at 65).

burden of proof thus reflects the importance of the interest at stake and the significant length of deprivation of that interest.[42]

The risk of error in the current procedure similarly favors a heightened burden of proof. The statutory regime governing protective order proceedings leaves trial courts with much discretion as to the duration of the order and its intrusion into the parent–child relationship.[43] In short, parents face a deprivation of their fundamental right for up to a lifetime if a trial court believes that their conduct rose to the level of a felony, regardless of whether the parent has been charged or convicted of a felony-level crime.[44] Underlying this discretion is the standard requiring that a preponderance of the evidence support the family violence findings, which may "misdirect the factfinder in the marginal case" by demanding consideration of "the quantity, rather than the quality, of the evidence."[45] When a lengthy deprivation of a

---

[42] *See A.C.*, 560 S.W.3d at 630 ("This heightened proof standard carries the weight and gravity due process requires to protect the fundamental rights at stake.").

[43] *E.g.*, Tex. Fam. Code § 85.025(a-1) (permitting trial courts to extend an order for any period exceeding two years upon making a requisite finding); *id.* § 85.022 (setting out actions that a trial court may prohibit a person found to have committed family violence from committing, including communication and contact with specific persons).

[44] *See id.* § 85.025(a-1) (allowing the court to render a protective order "effective for a period that exceeds two years" if it finds that the person subject to the order committed an act constituting felony family violence, "regardless of whether the person has been charged with or convicted of the offense").

[45] *Santosky*, 455 U.S. at 764. The protective-order statute is silent as to the burden of proof, and so it is presumed that the typical civil standard applies. *See In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) ("The applicable evidentiary standard is generally determined by the nature of the case or

fundamental right is at risk, however, "the social cost of even occasional error is sizable."[46]

The clear and convincing standard allocates the risk of error away from complete deprivation of parental contact with her child by requiring the firm conviction that a parent has engaged in family violence that is felonious, repeated, or has resulted in serious bodily harm.[47] It also instructs the factfinder—here, a trial court with considerable discretion—of the greater "degree of confidence" required for the decision at hand.[48]

Lastly, it is undeniable that the government has a "substantial, legitimate interest in protecting children and looking out for their best interests," which is at the forefront in a protective-order proceeding involving a parent–child relationship.[49] We have long recognized that "the best interest of a minor is usually served by keeping custody in the natural parents."[50] The government thus "registers no gain towards its

---

particular claim."); *see also Roper v. Jolliffe*, 493 S.W.3d 624, 638 (Tex. App.—Dallas 2015, pet. denied) ("Because [protective order] proceedings are civil in nature, the traditional standard of proof by a preponderance of the evidence applies.").

[46] *Santosky*, 455 U.S. at 764.

[47] Tex. Fam. Code § 85.025(a-1); *See G.M.*, 596 S.W.2d at 847 ("The interests at stake in those cases are deemed to be more substantial than mere loss of money and some jurisdictions accordingly reduce the risk to the defendant of having his reputation tarnished erroneously by increasing the plaintiff's burden of proof." (quoting *Addington*, 441 U.S. at 424)).

[48] *G.M.*, 596 S.W.2d at 847 (quoting *Addington*, 441 U.S. at 424).

[49] *N.G.*, 577 S.W.3d at 236.

[50] *Spratlan*, 543 S.W.2d at 352.

16

declared goals when it separates children from the custody of fit parents."[51] The government's interest too is best served by reducing the risk of the erroneous deprivation of parental rights. And the trial courts applying the clear and convincing evidence standard for two-plus-year protective orders are intimately familiar with its use in the parent–child context.[52] Any governmental interest in retaining a preponderance standard is slight compared to the protection a heightened standard affords against overreaching protective orders.

In first extending the clear and convincing standard to parental termination cases, we held that "[t]he right to enjoy a natural family unit is no less important than the right to liberty."[53] No-contact protective orders against a parent that exceed two years involve a sufficiently similar inhibition of the same right, justifying the same clear and convincing burden of proof. We hold that a trial court must find that clear and convincing evidence supports the imposition of a protective order prohibiting all contact between a parent and her children for a period exceeding two years.[54]

---

[51] *Santosky*, 455 U.S. at 767 (quoting *Stanley*, 405 U.S. at 652).

[52] *See* Tex. Fam. Code § 161.001(b) ("The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence . . . .").

[53] *G.M.*, 596 S.W.2d at 847.

[54] At oral argument, Stary also argued that due process required a felony *conviction* before a trial court can find that felony family violence occurred and extend the order beyond two years. *See* Tex. Fam. Code § 85.025(a-1)(1). In her briefing, she complains more broadly that she was not afforded the constitutional protections of a criminal trial. However, this argument was not preserved for review because it was not presented to the trial court. Tex. R. App. P. 33.1.

17

## C

The right of parents to the care, custody, and control of their children is fundamental, but it "is not an absolute unconditional right."[55] Underlying state intervention in protective order cases is the State's duty to "protect the safety and welfare of [] children" facing family violence.[56] Protection of the child remains a paramount consideration.[57]

When one parent applies for a protective order on behalf of his children against the other parent, these two concerns—a parent's fundamental right in the parent–child relationship and the protection of the child—appear on opposite sides. Unlike in termination proceedings, a court is not statutorily required to find that a protective order is in the best interest of the child before it prevents all contact by a parent.[58] But

---

[55] *De Witt v. Brooks*, 182 S.W.2d 687, 690 (Tex. 1944); *see also Loe*, 692 S.W.3d at 228 ("Parents' right to exercise control over decision-making for their children has limits.").

[56] *Cf. In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (explaining that this duty underlies any state intervention in the parent-child relationship); *see also* Tex. Fam. Code § 153.001(a) ("The public policy of this state is to . . . provide a safe, stable, and nonviolent environment for the child.").

[57] *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994) ("[P]rotection of the child is paramount.").

[58] *See* Tex. Fam. Code § 161.001(b)(2) (requiring termination be in the best interest of the child). The only best interest finding required by the protective order statute occurs when a court enters an order applying to both the applicant and the person the order is entered against. *Id.* § 85.001(b)(2). In these orders, the court can do things like grant exclusive possession of a residence to one party, require child support payments by one party, or prohibit a party from removing a child from the possession of another person named in the order. *Id.* § 85.021. For these orders, the court must find that they are in "the best interest of the person protected by the order or member of the family or household of the person protected by the order." *Id.* § 85.001(b)(2). However,

18

the purpose of protective orders that forbid contact between a parent and child should be "to protect the best interests of the children, not to punish parents for their conduct."[59] Thus, as we have held in the termination and custody contexts, a trial court must consider the child's best interest in deciding whether to ban all parental contact for longer than two years.[60] Affording proper weight to the child's best interest tempers the discretion trial courts possess to enter protective orders for any period between two years and a parent's lifetime.[61]

## III

Stary requests that this Court reverse the trial court's protective order and render judgment denying Ethridge's application. Under the standards announced today, trial courts rendering a protective order

---

no such finding is statutorily required for the protective order that only applies to the person found to have committed family violence. *Id.* § 85.001(b)(1).

[59] *A.V.*, 113 S.W.3d at 361.

[60] *See id.* ("Therefore in parental-rights termination proceedings, though parents face losing this highly-protected legal relationship, courts cannot ignore the statute's remedial purpose of protecting abused and neglected children."); *C.J.C.*, 603 S.W.3d at 812 (recognizing that "the best interest of the child is the paramount issue in a custody determination"). Our holdings apply to protective orders lasting longer than two years because we are reviewing the application of a statute governing orders of that duration. The Legislature, not the Constitution, drew a line at two years. We do not comment on the constitutional implications of protective orders lasting less than two years.

[61] This temperance stems from the presumption that a child's best interest is served when raised by natural parents. *See In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000) ("The presumption that the best interest of the child is served by awarding custody to the parent is deeply embedded in Texas law."); *Taylor v. Meek*, 276 S.W.2d 787, 790 (Tex. 1955) ("This presumption is based upon the natural affection usually flowing from parentage.").

19

exceeding two years against a parent must (1) make the requisite findings for an order to exceed two years under a clear and convincing standard and (2) consider the best interest of the child.

Without specifying the applicable burden of proof, the trial court found that Stary committed felony family violence "based on the evidence and testimony presented." It also found that the order was in the best interest of the three children. It did not provide further requested findings of fact and conclusions of law.

In reviewing the trial court's findings, the court of appeals applied a legal sufficiency analysis under a preponderance of the evidence standard.[62] It did not review the best interest finding. Thus, the record contains no findings under the burden of proof announced today. In cases requiring clear and convincing evidence, the evidence must be such that "a factfinder could reasonably form a firm belief or conviction about the truth of the matter on which the State bears the burden of proof."[63]

Here, the court of appeals held that some evidence exists to show that Stary committed felony level family violence warranting a protective order lasting longer than two years.[64] What is not apparent is whether the trial court would have prohibited Stary from seeing or

---

[62] *See* 695 S.W.3d at 430 ("If more than a mere scintilla of evidence exists, we will overrule the legal sufficiency challenge.").

[63] *J.F.C.*, 96 S.W.3d at 265–66.

[64] 695 S.W.3d at 435. Ethridge testified, under a hearsay exception, to what the children had recounted to him about Stary's physical abuse. *See* Tex. Fam. Code § 84.006. He also introduced medical records corroborating his testimony regarding the incident leading to criminal charges.

speaking with her children for her lifetime under a heightened evidentiary standard that recognizes the fundamental rights of parents. Given that some evidence may exist to support an order prohibiting contact for longer than two years, the "most prudent course" is to remand the case to the trial court to conduct a new hearing under the appropriate evidentiary burden.[65]

*   *   *

Protective orders ordinarily provide short-term protection from family violence. Protective orders that ban all communication between a parent and her children for more than two years, however, present special consideration of the fundamental right to parent. Due process demands that clear and convincing evidence support such an order and an evaluation of whether prohibiting all contact between a parent and child for the duration of the order is in the child's best interest. In light of the standards announced today, we reverse the judgment of the court of appeals and remand the case to the trial court for a new hearing.

Jane N. Bland
Justice

**OPINION DELIVERED:** May 2, 2025

---

[65] *Cf. Thomson v. Hoffman*, 674 S.W.3d 927, 928–29 (Tex. 2023) (remanding to the court of appeals as "the most prudent course" of action "[b]ecause the parties and the court of appeals did not have the opportunity to evaluate this case" in light of a new legal framework announced by the Court). As we are remanding the case, we need not reach Stary's further challenge to the exclusion of evidence at the first hearing. *See Long v. Griffin*, 442 S.W.3d 253, 256 (Tex. 2014).